SCOTT N. SCHOOLS (SC 9990)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CASBN 161299)
JEFFREY R. FINIGAN (CASBN 168285)
J. DOUGLAS WILSON (DCBN 412811)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, California 94102
    Telephone: (415) 436-7232
    Facsimile: (415) 436-7234
    Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | Criminal No. CR 07-0732 SI |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **UNITED STATES' MOTION TO HAVE COURT CONDUCT INQUIRY INTO POTENTIAL CONFLICT OF INTEREST** |
| BARRY LAMAR BONDS, | ) | |
| Defendant. | ) | **REDACTED VERSION** |

    The government asks the Court to conduct an inquiry into whether two of the attorneys representing defendant Barry Bonds have a potential conflict of interest that could adversely affect their representation of Bonds. If Bonds wishes to waive the potential conflict, the government asks that the Court personally inquire of the defendant to ensure that the waiver is knowing, voluntary, and intelligent. The government respectfully submits that the Court should conduct its inquiry in person and at the Court's earliest convenience.

MOTION FOR CONFLICT INQUIRY
CR 07-0732 SI

## BACKGROUND

Defendant Bonds is charged with perjury and obstruction of justice during his appearance before the grand jury investigating the distribution of anabolic steroids by BALCO Laboratories. At Bonds's initial appearance on December 7, 2007, the attorneys who appeared to represent him included Alan Ruby and Cristina Arguedas. Both attorneys represented clients in connection with the investigation that led to Bonds's indictment.

Mr. Ruby represented Dr. Arthur Ting, who was Bonds's personal physician. ************************************************************************
************************************************************************
************************************************************************
************************************************************************
************************************************************************
************************************************************************
*************************************** Dr. Ting is likely to be a witness for the government at trial.

Ms. Arguedas represented four clients related to the BALCO investigation. Ms. Arguedas represented Tim Mongtomery, an Olympic athlete who admitted that he had obtained steroids from BALCO. Mr. Montgomery is the former domestic partner of Marion Jones, who pleaded guilty to lying to federal agents during the BALCO investigation, and was coached by Trevor Graham, who is now under indictment for making false statements to federal agents during the BALCO investigation.
************************************************************************
************************************************************************
*************************************************** The government does not currently anticipate that it will call Mr. Montgomery to testify during its case-in-chief at trial, but it cannot foreclose that possibility.

Ms. Arguedas also represented three professional football players, Chris Cooper, Chris Hetherington, and Tyrone Wheatley ****************************************

MOTION FOR CONFLICT INQUIRY
CR 07-0732 SI 2

1  ****************************************************************
2  ****************************************************************
3  ****************************************************************
4  ******************************************************* Again, the government does not currently anticipate that it will call the professional football players as witnesses during its case-in-chief at trial, but it cannot foreclose the possibility that they will be witnesses.

To the government's knowledge, Mr. Ruby no longer represents Dr. Ting, and Ms. Arguedas no longer represents Mr. Montgomery or the professional football players. The government is not fully aware, however, of the nature or length of Mr. Ruby's representation of Dr. Ting or Ms. Arguedas's representation of Mr. Montgomery or the football players.

## DISCUSSION

### I. Applicable legal principles

Bonds's "Sixth Amendment right to counsel includes a correlative right to representation free of conflicts of interest." *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir. 2004). "A conflict of interest can arise in cases of simultaneous or successive representation." *United States v. Elliot*, 463 F.3d 858, 865 (9th Cir. 2006); *see Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989) ("Conflicts of interest can arise both in cases of simultaneous representation and successive representation, though it generally is more difficult to demonstrate an actual conflict resulting from successive representation."). In cases of successive representation, "'conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties.'" *United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002) (quoting *Fitzpatrick*, 869 F.2d at 1247). Successive representation raises the risk "'that the attorney who has obtained privileged information from the former client may fail to conduct a rigorous cross-examination [of that client] for fear of misusing that confidential information.'" *Shwayder*, 312 F.3d at 1118 (quoting *Fitzpatrick*, 869 F.2d at 1252); *see United States v. Jeffers*, 520 F.2d 1256, 1265 (7th Cir.

1975 (Stevens, J.) (successive representation raises danger that counsel may "overcompensate and fail to cross-examine fully for fear of misusing his confidential information"). As the Supreme Court has explained in the context of joint (as opposed to successive) representation, "the evil…is in what the advocate finds himself compelled to *refrain* from doing." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978); *see Lewis*, 391 F.3d at 997 (quoting *Holloway* in successive representation case). In inquiring into whether a conflict exists, the Court "cannot be governed solely by the perceptions of the attorney." *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994).

The California Rules of Professional Conduct also impose constraints on an attorney's ability to engage in successive representation. Rule of Professional Conduct 3-310(B) provides as follows:

> A member shall not accept or continue representation of a client without providing written disclosure to the client where:
>
> * * *
>
> (2) The member knows or reasonably should know that:
>
> (a) the member previously had a legal…relationship with a party or witness in the same matter; and
>
> (b) the previous relationship would substantially affect the member's representation.

Rule of Professional Conduct 3-310(E) provides, "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Under these rules, the informed written consent of the current client is necessary when the attorney has obtained material confidential information from the former client. *See* Rule 3-310, Discussion; *People v. Baylis*, 139 Cal. App. 4th 1054, 1065, 43 Cal. Rptr. 559, 568 (Cal. Ct. App. 2006) ("In the successive representation context, the chief fiduciary value jeopardized is that of client *confidentiality*, not loyalty.") (internal quotation marks and citation omitted). Unlike federal courts interpreting the Sixth Amendment, California courts interpreting Rule 3-310(E) presume that an attorney

learned relevant confidential information in the course of a prior representation that is substantially related to the current representation. *See id.* at 1066, 43 Cal. Rptr. at 568 ("'Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed.*'") (quoting *Flatt v. Superior Court*, 9 Cal. 4th 275, 283, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (1994)).

"A defendant may waive his right to the assistance of an attorney who is unhindered by conflicts." *Lewis*, 391 F.3d at 996; *see Alberni v. McDaniel*, 458 F.3d 860, 870 (9th Cir. 2006) (trial court may eliminate consequence of conflict "through seeking a waiver" among other steps). To be valid, that waiver "must be voluntary, knowing, and intelligent, such that the defendant is sufficiently informed of the consequences of his choice." *Lewis*, 391 F.3d at 996. In particular, to execute a valid waiver, a defendant must understand "the specific ramifications" of forgoing conflict-free counsel, *Lockhart v. Terhune*, 250 F.3d 1223, 1233 (9th Cir. 2001), and must be told that his attorney owes a continuing duty of loyalty to his former client. *Lewis*, 391 F.3d at 996. Although a defendant need not know "that particular dilemmas will present themselves," he must understand "all the risks that are likely to develop." *United States v. Allen*, 831 F.2d 1487, 1500 (9th Cir. 1987); *see Shwayder*, 312 F.3d at 1117 (waiver must take into account "the actual scope of the case as it proceed[s]"). A trial court must ensure that the waiver is fully intelligent and voluntary because the court of appeals will "indulge every reasonable presumption against" a waiver of the right to conflict-free counsel. *Lewis*, 391 F.3d at 997; *accord Garcia v. Bunnell*, 33 F.3d 1193, 1197 (9th Cir. 1994).

"Trial courts have a duty of inquiry whenever they know or reasonably should know that a particular conflict exists." *Garcia v. Bunnell*, 33 F.3d at 1199. Ninth Circuit precedent suggests, moreover, that the trial court must personally question the defendant to ensure that he understands the "possible adverse impact" of the conflict on his counsel. *Alberni*, 458 F.3d at 871. For example, in *Lewis v. Mayle*, the defendant and his attorney's former client executed extensive written waivers of the potential conflict raised

by the attorney's successive representation of the defendant and a prosecution witness. The Ninth Circuit found the waiver invalid, in part because the court had only a "cursory" discussion" with the defendant about the consequences of the waiver. 391 F.3d at 996-97. Similarly, in *Belmontes v. Brown*, 414 F.3d 1094, 1118-19 (9th Cir. 2005), *rev'd on other grounds sub nom. Ayers v. Belmontes*, 127 S. Ct. 469 (2006), the court found a waiver of a conflict invalid when neither the defendant's attorney nor the trial judge explained that defendant's counsel owed a continuing duty of loyalty to his former client and that this conflict could impair counsel's ability to put on a defense. And in *Garcia v. Bunnell*, the court held that if a district court finds an actual conflict, the court must inform the defendant "of his right to conflict-free representation and explicitly and neutrally discuss[] the possibility of a waiver." 33 F.3d at 1199; *see also Mickens v. Taylor*, 535 U.S. 162, 173 (2002) ("In those cases where the potential conflict is in fact an actual one, only inquiry will enable the judge to avoid all possibility of reversal by either seeking a waiver or replacing a conflicted attorney.").

When the defendant does not waive a potential conflict arising from successive representation, it may become an actual conflict requiring reversal of any conviction obtained. *See United States v. Elliot*, 463 F.3d at 865. Reversal may result if the defendant shows "that an actual conflict of interest adversely affected his lawyer's performance." *United States v. Crespo de Llano*, 830 F.2d 1532, 1540 (9th Cir. 1987), *see Mickens*, 535 U.S. at 174 (in successive representation case, "it was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance").

**II.     The court should inquire into the conflict and ensure that any waiver is valid.**

Both Mr. Ruby and Ms. Arguedas represented individuals involved in the investigation that led to Bonds's grand jury appearance and subsequent indictment. Accordingly, their prior representation is "substantially related" to the prosecution of Bonds and could give rise to a conflict. *See Shwayder*, 312 F.3d at 1118. In addition, both attorneys owe an ongoing duty of loyalty to their former clients and could have obtained relevant privileged information from those clients. Indeed, as noted, California

courts interpreting the California Rule of Professional Conduct 3-310(E) presume that an attorney learned relevant confidential information during a substantially related prior representation.[1]

The attorneys' duty of loyalty and possession of confidential information could adversely affect their ability to represent Bonds. As the Ninth Circuit decisions explain, Mr. Ruby's and Ms. Arguedas's prior representation may consciously or unconsciously inhibit them from vigorously representing their current client. That danger is particularly acute for Mr. Ruby, who represented a probable witness for the government. Mr. Ruby's possession of confidential information from his prior representation of Dr. Ting may impede his ability to conduct a rigorous cross-examination if Dr. Ting testifies for the government. The same risk could arise for Ms. Arguedas if the government calls any of her former clients to testify.

Under applicable Ninth Circuit decisions, Bonds may waive any conflict arising from his attorneys' prior representation of witnesses and potential witnesses in this case. If Bonds is willing to execute a waiver, the government submits that it should be in writing, and that the Court should personally inquire of Bonds whether he understands what he is waiving and the practical consequences of that waiver. In particular, the government submits that before waiving his right to conflict-free counsel, Bonds should be informed that his attorneys owe a continuing duty of loyalty to their former clients, that they may possess confidential information from their representation of those clients, that their duty of loyalty to their former clients may impede their ability to represent Bonds, that Mr. Ruby's duty of loyalty to Dr. Ting and his possible possession of confidential information arising from his relationship with Dr. Ting may affect his ability to defend Bonds and to cross-examine Dr. Ting; and that Ms. Arguedas's representation of Mr.

---

[1] The California Rules of Professional Conduct impose an obligation on an attorney accepting the representation of a client in a matter that would be substantially affected by a prior representation to (1) provide written disclosure to the new client; and (2) if the attorney has obtained confidential information from the prior client, obtain the informed written consent of the prior client. Because those obligations pertain to the attorneys' ethical duties, not the requirements of the Sixth Amendment, the government does not ask this Court to enforce them.

MOTION FOR CONFLICT INQUIRY
CR 07-0732 SI                               7

| | |
|---|---|
| 1 | Montgomery and the three professional football players may likewise impede her ability |
| 2 | to cross-examine those individuals if they become witnesses at trial. |
| 3 |     If Bonds declines to waive the potential conflicts, the government respectfully |
| 4 | submits that the Court should hold a hearing to determine whether Mr. Ruby's and Ms. |
| 5 | Arguedas's prior representation of witnesses in this investigation is likely to give rise to |
| 6 | an actual conflict as the case progresses. *See United States v. Lewis*, 520 F.2d at 1265 |
| 7 | (counsel can demonstrate absence of conflict by explaining scope of prior representation). |
| 8 | Because the government is withholding a limited amount of discovery from defendants |
| 9 | because of the potential conflict, the government asks that the Court resolve this issue at |
| 10 | its earliest convenience and that any hearing occur at the scheduled appearance on |
| 11 | February 7, 2008. |

DATED: December 19, 2007

Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney

*/s/ Douglas Wilson*

MATTHEW A. PARRELLA
JEFFREY D. NEDROW
JEFFREY R. FINIGAN
J. DOUGLAS WILSON
Assistant United States Attorneys