JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CASBN 161299)
JEFFREY R. FINIGAN (CASBN 168285)
J. DOUGLAS WILSON (DCBN 412811)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, California 94102
    Telephone: (415) 436-7232
    Facsimile: (415) 436-7234
    Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>     Plaintiff, )<br><br>   v. )<br><br>BARRY LAMAR BONDS, )<br><br>     Defendant. )<br>_____) | Criminal No. CR 07-0732 SI<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS COUNTS I, II, V, VII, VIII, IX, XI, XII, XIV, AND XV OF THE SUPERSEDING INDICTMENT**<br><br>Date: October 24, 2008<br>Time: 11:00 a.m.<br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Counts Six and Seven are not multiplicitous. . . . . . . . . . . . . . . . . . . . . . . 2

II.   None of the perjury counts rests on fundamentally ambiguous statements. . . . . . . 5

      A.    Applicable legal principles. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B.    The questions asked Bonds were not fundamentally ambiguous. . . . . . . . . . 7

            1.    Count Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            2.    Count Five. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            3.    Count Eight . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            4.    Count Nine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            5.    Count Eleven. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            6.    Count Twelve. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            7.    Count Fourteen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

III.  Count Fifteen is valid and should not be dismissed. . . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASES

*Apprendi v. New Jersey*, 530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gebhard v. United States*, 422 F.2d 281 (9th Cir. 1970). . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Aguilar*, 515 U.S. 593 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Berger*, 473 F.3d 1080 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Boone*, 951 F.2d 1535 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. Bussell*, 414 F.3d 1048 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Duran*, 41 F.3d 540 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Gaudin*, 515 U.S. 506 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Israelski*, 597 F.2d 22 (2d Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Keen*, 104 F.3d 1111 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. McKenna*, 327 F.3d 830 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Olsowy*, 836 F.2d 439 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Oren*, 893 F.2d 1057 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 1

*United States v. Resendiz-Ponce*, 549 U.S. 102, 127 S. Ct. 782 (2007). . . . . . . . . . . . . 16

*United States v. Ryan*, 828 F.2d 1010 (3d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Salas-Camacho*, 859 F.2d 788 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . 3

*United States v. Segall*, 833 F.2d 144 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Williams*, 128 S. Ct. 1830 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Zalapa*, 509 F.3d 1060 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 2

# STATUTES

18 U.S.C. § 1503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

**INTRODUCTION**

Defendant Barry Bonds moves to dismiss nine counts of the Superseding Indictment on multiple grounds. He asserts that Count One should be dismissed because it fails to include the word "material." As Bonds acknowledges, however, the Ninth Circuit has squarely held that "[a]lthough materiality is an essential element of a conviction for perjury, the government need not allege materiality if the facts pleaded in the indictment 'warrant the inference of materiality.'" *United States v. Duran*, 41 F.3d 540, 544 (9th Cir. 1994) (quoting *United States v. Oren*, 893 F.2d 1057, 1063-64 (9th Cir. 1990)) (emphasis deleted). Here, the superseding indictment makes clear that it alleges that the false statements alleged in Count One are material by explicitly stating the purpose and focus of the grand jury's investigation. *See* Indictment ¶¶ 4-5. Although Bonds contends that *Duran* is no longer good law in light of *United States v. Gaudin*, 515 U.S. 506 (1995), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Ninth Circuit has recently reaffirmed *Duran*'s holding that an indictment for making false statements need not allege materiality. *See United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007). Nevertheless, the typographical omission of the word "material" from Count One will be remedied, either by obtaining a second superseding indictment or obtaining a new indictment solely on that count that could be joined with the current indictment for trial.

Bonds's remaining challenges are without merit. Bonds's argument that Counts Six and Seven are multiplicitous should be rejected because he previously argued that a count containing both the statements alleged in those counts was duplicitous. In any event, Counts Six and Seven are not multiplicitous because they do not involve identical answers to identical questions and because Bonds's false answers to the two questions impaired different aspects of the grand jury's investigation. Bonds's effort to renew his claims that the questions that form the basis for several counts of the indictment are "fundamentally ambiguous" should also be rejected. As explained in the government's opposition to Bonds's initial motion to dismiss and in Part II of this opposition, each count rests on Bonds's answers to unambiguous questions, and Bonds's contrary

contention ignores the plain language of the prosecutor's questions, the context in which they were asked, and Bonds's failure to express any confusion when answering them. Finally, Bonds's new challenge to the obstruction-of-justice count, Count Fifteen, rests on a misapprehension of the allegations of that count. Count Fifteen alleges that Bonds's grand jury testimony as a whole obstructed the grand jury's inquiry, and therefore any ambiguity, duplicity, or multiplicity in the other fourteen counts of the indictment does not require dismissal of that count.

## I.     Counts six and seven are not multiplicitous.

Bonds asserts (Mot. at 4-5) that Counts Six and Seven are multiplicitous because both counts rest on the same question and answer. At the outset, Bonds should be foreclosed from asserting that these two counts are multiplicitous because he has previously alleged that the inclusion of these two statements in Count Three of the original indictment rendered that count duplicitous. Both cannot be true. If, as this Court found in deciding Bonds's original motion to dismiss, the government improperly joined two or more false statements into Count Three of the original indictment (rendering that count duplicitous), then separating two of the duplicitous false statements into separate counts in the superseding indictment cannot create multiplicitous allegations. Put another way, either the government improperly charged the two statements in a single duplicitous count or it improperly charged the two statements in separate, multiplicitous counts, but it cannot have done both. Bonds chose to claim that the former Count Three was duplicitous, and he should not now be heard to argue that Counts Six and Seven are multiplicitous.

If the Court reaches Bonds's multiplicity challenge, it should be rejected. In support of his contention, Bonds relies on cases addressing whether Congress intended a single act to give rise to multiple violations of the same statute, *see United States v. Zalapa*, 509 F.3d 1060 (9th Cir. 2007), *United States v. Keen*, 104 F.3d 1111 (9th Cir. 1997), and he ignores Ninth Circuit decisions that directly address the question whether multiple false statements may constitute multiple violations of the same statute. Under

the test set by applicable Ninth Circuit decisions, and in the context of the entire grand jury transcript, Counts Six and Seven are not multiplicitous, and Bonds's motion to dismiss Count Seven should be denied.

"'Multiplicity is the charging of a single offense in more than one count.'" *United States v. Segall*, 833 F.2d 144, 146 (9th Cir. 1987) (quoting *United States v. Israelski*, 597 F.2d 22, 24 (2d Cir. 1979)). To determine whether multiple counts charging false statements or perjury are multiplicitous, the Ninth Circuit uses a two-part test. *See United States v. Salas-Camacho*, 859 F.2d 788, 791 (9th Cir. 1988). First, two or more false statement or perjury counts are not multiplicitous unless they charge "'identical false statements… made in response to identical questions.'" *United States v. Stewart*, 420 F.3d 1007, 1013 (9th Cir. 2005) (quoting *United States v. Olsowy*, 836 F.2d 439, 443 (9th Cir. 1987)). Second, even if multiple counts allege identical statements made to identical questions, the counts are not multiplicitous if the second false statement further impaired the operations of government, *Salas-Camacho*, 859 F.2d at 791, or in this case, the grand jury's investigation.

Here, neither prong of the test is met. In the questioning that led to the statement alleged in Count Six, the prosecutor asked Bonds about the first page of Exhibit 503. That page contained the following notation: "'G' 1 Box off season & 2 Box season: $1500.00." Directing Bonds's attention to this notation, the prosecutor asked whether Greg Anderson ever gave Bonds an item that he referred to as G or the G. Bonds first gave an evasive answer and then denied that he received any boxes labeled "G." Grand Jury Transcript (GJTR) at 47. To conclude the questioning on this notation on the document, the prosecutor asked the question referenced in Count Six:

> And, again, just to be clear and then I'll leave it, but [Anderson] never gave you anything that you understood to be human growth hormone? Did he ever give you anything like that?

GJTR at 48. Bonds answered, "No." *Ibid*. This answer forms the basis for Count Six.

The questioning leading to the allegations of Count Seven occurs 50 pages later in the grand jury transcript and concerned a different page of Exhibit 503. *See* GJTR at 96-

97.  In that questioning, the prosecutor asked Bonds about a calendar page from December 2001 that bore the initials "BB," as well as notations such as "clear," "1 cc T 200 mg," and ".25 G."  GJTR at 96.  The prosecutor first asked Bonds whether he was getting "items" – referring to "the flax seed oil" and the cream – during the month of December 2001.  Bonds answered that question, "No."  The prosecutor then asked about an entry that appeared on each Monday of the calendar stating "1 cc T 200 mg" and ".25 G."  In an effort to determine whether these entries reflected the administration of illegal steroids to Bonds during December 2001, the prosecutor asked whether Bonds obtained either testosterone or growth hormone during December 2001.  Bonds answered, "Not at all" to both questions.  His answer to the prosecutor's question on growth hormone forms the basis for Count Seven.

As the context shows, these two counts involved separate lines of inquiry and separate aspects of the grand jury's investigation.  In the questioning leading to Count Six, the prosecutor sought to determine whether an undated notation on a document (page 1 of Exhibit 503) showed that Anderson had supplied Bonds with boxes containing human growth hormone, an illegal substance.  Because the notation was undated, the prosecutor's question was not focused on any particular time period.  In the questioning leading to the answer that forms the basis for Count Seven, the prosecutor asked Bonds about a different document, the calendar page dated December 2001.  The prosecutor's questions sought to determine whether the entries on the calendar reflected Bonds's use of testosterone or human growth hormone in a particular time frame, December 2001.

In sum, Count Six and Count Seven do not involve identical questions because they arise from questioning about different documents, and the question underlying Count Seven relates to a specific time period.  Although Bonds's negative answer to the question alleged in Count Seven was consistent with his negative answer alleged in Count Six, the prosecutor's questions were not an effort to "bludgeon a witness who is lying by repeating and rephrasing the same question." *Gebhard v. United States*, 422 F.2d 281, 289 (9th Cir. 1970).  Instead, as is typical in grand jury questioning, the prosecutor sought

to sharpen the inquiry by focusing on a specific time period and using different documents in an effort to refresh the witness's recollection or induce him to concede that the document required him to change his prior testimony. Thus, the consistency between Bonds's false statements in Counts Six and Seven is not a result of identical questions posed by the prosecutor but of the prosecutor's effort to use different questions and documents to elicit the truth.

Moreover, because the questioning underlying each count rested on a different document, each of Bonds's allegedly false answers impaired a different aspect of the grand jury's investigation. Bonds's false answer to the question alleged in Count Six impaired the grand jury's ability to understand the meaning of the first page of Exhibit 503, and Bonds's false answer to the question alleged in Count Seven impaired the grand jury's ability to determine the meaning of the entries on the December 2001 calendar page. For these reasons, the two counts are not multiplicitous.

## II.    None of the perjury counts rests on fundamentally ambiguous statements.

Bonds renews his contention (Mot. at 5-13) that seven of the questions that led to the false statements alleged in the indictment are so "fundamentally ambiguous" that they cannot support the perjury counts. For the reasons stated in the government's opposition to Bonds's first motion to dismiss, that contention should be rejected. First, Bonds's claim is premature, because questions concerning the meaning of a question and the defendant's interpretation of it are ordinarily left to the jury. For that reason, a court may not ordinarily determine before trial whether questions and answers in a perjury indictment are fundamentally ambiguous. Second, whether a question that elicits an allegedly false answer is ambiguous depends on the context of the question and answer. Despite the government's detailed effort in its opposition to Bonds's prior motion to dismiss to explain the context of the questions and answers charged in the indictment, Bonds makes no effort to situate the questions the prosecutors asked or the answers he gave within the context of his grand jury testimony as a whole. To reiterate, that context includes the fact that the prosecutor specifically told Bonds that if he did not understand a

question, he could consult with counsel or ask the prosecutor to rephrase it.  GJTR at 5-6.

Bonds never said he was confused about, or asked the prosecutor to rephrase, a question.

Finally, even viewed outside of the context in which they were asked, none of the

questions asked Bonds was so fundamentally ambiguous that it cannot support a perjury

prosecution.

### A.     Applicable legal principles

"Generally speaking, the existence of some ambiguity in a falsely answered

question will not shield the respondent from a perjury or false statement prosecution."

*United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003); *United States v. McKenna*,

327 F.3d 830, 841 (9th Cir. 2003).  Instead, when a perjury indictment rests on an

allegedly ambiguous question, "[i]t is ordinarily for the jury to decide which construction

the defendant placed on a question."  *McKenna*, 327 F.3d at 841; *see United States v.*

*Camper*, 384 F.3d 1073, 1076 (9th Cir. 2004) ("Ordinarily, the finder of fact decides

which of the plausible interpretations of an ambiguous question the defendant

apprehended and responded to.").  Only when "a question is 'excessively vague,' or

'fundamentally ambiguous,' the answer may not, as a matter of law, form the basis for a

prosecution for perjury or false statement."  *Culliton*, 328 F.3d at 1078 (quoting *United*

*States v. Ryan*, 828 F.2d 1010, 1015 (3d Cir. 1987)).

A "question is not fundamentally ambiguous simply because the questioner and

respondent might have had different interpretations."  *Camper*, 384 F.3d at 1076.

Instead, to determine whether a question is "fundamentally ambiguous," a court must

examine whether the "context of the question and other extrinsic evidence relevant to the

defendant's understanding of the question may allow the finder of fact to conclude that

the defendant understood the question as the government did and, so understanding,

answered falsely."  *Id.*; *accord United States v. Bussell*, 414 F.3d 1048, 1057 (9th Cir.

2005).  After looking at the context and relevant extrinsic evidence, a court may find a

question fundamentally ambiguous only when "'men of ordinary intelligence' cannot

arrive at a mutual understanding of its meaning."  *United States v. Culliton*, 328 F.3d at

1078 (quoting *United States v. Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991)).  In short, to prevail on his motion, Bonds must show that in light of the context of the questions and any relevant extrinsic evidence, a jury could not find that a reasonable person would have "understood the question[s] as the government did."  This he fails to do; in fact, the grand jury transcript demonstrates that Bonds understood the questions perfectly well and chose his answers carefully, if falsely.

> **B.     The questions asked Bonds were not fundamentally ambiguous.**

> **1.     Count Two**

In the questioning leading up to the statement alleged in Count Two, the prosecutor confronted Bonds with a document showing that "Barry B." tested positive for two anabolic steroids in November 2000.  The prosecutor then asked, "So I'm going to ask you in the weeks and months leading up to November 2000, were you taking steroids?"  Bonds answered, "no."  The prosecutor continued, "or anything like that?," and Bonds answered, "<u>No, I wasn't at all</u>.  I've never seen these documents.  I've never seen these papers."  The underlined portion of the answer forms the basis for Count Two.  Although Bonds's first answer ("no") was charged as a separate specification of perjury in the first indictment, the superseding indictment alleges only that the statement, "No, I wasn't at all" is perjurious.

Bonds argues (Mot. at 8) that the question alleged in Count Two is ambiguous in two respects.  First, Bonds contends that the question leading up to Bonds's answer, "No, I wasn't at all," is fundamentally ambiguous because the prosecutor failed "to reasonably identify what substances can be deemed 'anything like' steroids."  Second, Bonds asserts (Mot. at 8) that the question "in the weeks and months leading up to November 2000, were you taking steroids?" is "fundamentally ambiguous as to time period at issue."  He contends that "a truthful answer to the 'weeks' question could be different than a truthful answer to the 'months' question."

These contentions ignore the context of the questions and answers alleged in Count One and the grand jury examination as a whole.  First, as the indictment itself

makes clear, the questions that led to the statement that forms the basis for Count One arose out of the prosecutor's effort to examine Bonds about the meaning of two documents that, taken together, show that Bonds tested positive for steroids. At trial, the government will seek to introduce those documents and present testimony to explain their meaning. Until the jury sees those documents and hears the explanatory testimony – that is, until the jury understands the context of the questions – any inquiry into whether the questions were ambiguous is premature.

Second, the additional context supplied by Bonds's grand jury testimony as a whole shows that the questions are not ambiguous. Throughout his testimony, Bonds denied that he ever knowingly took steroids. For that reason, he could not have perceived the prosecutor's question about the "weeks and months leading up to November 2000" as ambiguous; as Bonds's answer shows, he did not distinguish between "weeks" and "months," because his answer would have been the same for any time period. Third, in the colloquy that forms the basis for Count One, Bonds denied that he ever knowingly took steroids provided by Anderson. At trial, the government's evidence will show that Bonds received steroids from Anderson in the period before the November 2000 positive drug test, and that evidence raises the inference that Anderson gave Bonds the steroids that caused him to test positive in November 2000. Thus, the questions that led to the false statement alleged in Count Two simply sought to narrow the focus of earlier questions, including the question alleged in Count One.

Even divorced from their context, the questions that led to the false statement alleged in Count Two are not fundamentally ambiguous. The prosecutor's question plainly sought to determine why Bonds apparently tested positive for anabolic steroids in November 2000, and the phrases "weeks and months" and "anything like that" must be interpreted in that context. Thus, the "weeks and months" question is reasonably interpreted to ask Bonds whether he took steroids in the period before the test that resulted in the positive test. Likewise, the phrase "anything like that" asks whether Bonds took anything like steroids that could have led to a positive steroid test. Bonds's

straightforward answers ("no," "not at all") show that he understood the questions and did not believe they were ambiguous.

## 2. Count Five

In the questions that led to the false statement alleged in Count Five, the prosecutor sought to ascertain whether Anderson ever injected Bonds with anything. The prosecutor first directly asked Bonds, "Did Greg [Anderson] ever give you anything that required a syringe to inject yourself with?" Bonds evaded this question by referring to his "personal doctor" and his friendship with Anderson. In an effort to obtain an answer to his question, the prosecutor made clear that he was not referring to the Giants team physician, anyone involved in the surgeries that Bonds had undergone, or Bonds's personal physician. After excluding these individuals from the scope of his question, the prosecutor asked whether "other individuals like Mr. Anderson or any associates of his" had ever injected Bonds with anything. Bonds argues (Mot. at 9) that this question is fundamentally ambiguous because "it is impossible to determine the identity of the individuals the prosecutor's question reasonably placed in issue."

This contention should be rejected, for at least two reasons. First, taken as a whole, the portion of the questioning quoted in the indictment makes clear that the prosecutor sought to inquire whether Anderson had ever injected Bonds with anything. Because Bonds failed to answer that straightforward question, the prosecutor clarified that he was not asking whether any medical personnel of any kind had ever injected Bonds with anything. The prosecutor then repeated the gist of his original question. Bonds's response ("no, no") shows that he understood the prosecutor's ultimate question to refer to Anderson. Second, even if the question was insufficiently specific in narrowing the universe of persons to whom it refers, the question clearly asks whether Anderson ever injected Bonds with anything. Thus, even if Bonds could not have understood who the "individuals" and "associates" were, his answer of "no" means that neither Anderson nor any "associate" ever injected him with anything. Accordingly, that answer is false if the evidence shows that Anderson injected Bonds. *See United States v.*

*Boone*, 951 F.2d at 1535 (ambiguous portion of "disjunctive" question does not render entire question ambiguous). Indeed, as noted above, Bonds denied that he ever took steroids so the inclusion of the phrase "or any associates of his" did not render the question ambiguous for Bonds.

### 3. Count Eight

Count Eight charges that Bonds made a material false statement when he answered "No" to the question, "In January of 2002, then, again, just to be clear, you weren't getting any testosterone or growth hormone from Mr. Anderson during that period of time?" In his initial motion to dismiss, Bonds did not argue that this question was fundamentally ambiguous. Bonds now argues, however (Mot. at 9), that "the compound nature of the question count [sic] renders it sufficiently duplicitous and misleading to require dismissal."

As set forth above, however, the Ninth Circuit has held that a question phrased in the disjunctive that contains an ambiguous phrase is not "fundamentally ambiguous" as long as the remainder of the question is sufficiently precise. *See Boone*, 951 F.2d at 1535. Here, there is no ambiguity in the question because it did not ask Bonds to choose between two alternatives; rather, it asked whether either of two things was true: 1) did Anderson give Bonds testosterone or 2) did Anderson give Bonds growth hormone. Bonds's answer of "no" is a denial that Anderson had given him either drug. Moreover, Bonds's unambiguous answer shows that he comprehended the question completely.

### 4. Count Nine

In the colloquy leading to the question that forms the basis for Count Nine, Bonds described how Anderson came to the ballpark and rubbed "some lotion-type stuff" on Bonds's arm and gave him something that Anderson called "flax seed oil." In response, the prosecutor asked, "When did that happen for the first time?" Without expressing any doubt about the meaning of the prosecutor's question, Bonds responded, "Not until 2003, this season." Bonds argues (Mot. at 10) that the word "that" in the prosecutor's question is ambiguous because "there is no reliable means for determining the event to which the

prosecutor referred when he inquired about 'that' having happened for the first time."

In fact, the question simply follows up on Bonds's own description of an incident in which Anderson rubbed him with a cream and gave him "flax seed oil." That is how Bonds described the incident, and the prosecutor's question is merely an effort to determine when it occurred. In other words, the defendant set the context for Count Nine's question in his previous answer; it is illogical to argue now that Bonds did not understand the issue he himself raised. Moreover, even if the question contained some ambiguity, it at most raises a question for the jury to determine based on the full context of the questioning and other evidence presented by the government at trial.

### 5. Count Eleven

Count Eleven arises out of the prosecutor's effort to confirm that Anderson never gave Bonds anything other than vitamins before the 2003 season. After Bonds evaded the prosecutor's first effort to ask that question, the prosecutor asked it again, "prior to last season [*i.e.*, the 2003 season], you never took anything that [Anderson] asked you to take, other than vitamins." Bonds answered, "Right. We didn't have any other discussions." The prosecutor continued, "No oils like this or anything like this before?" Bonds answered, "No, no, no, not at all. Not at all." Count Four of the first indictment charged that both of Bonds's answers during this colloquy – "Right. We didn't have any other discussions" and "No, no, no, not at all. Not at all" – were material false statements. Count Eleven of the superseding indictment sets forth the entire colloquy but alleges only that Bonds's answer, "Right" constitutes a material false statement. Accordingly, the question that forms the basis for Count Eleven is "prior to last season, you never took anything that [Anderson] asked you to take, other than vitamins?"

Bonds argues (Mot. at 10-11) that the prosecutor's question could refer to water or over-the-counter substances "or any number of innocuous substances" and is therefore ambiguous. Put in context, however, the prosecutor's question is part of an effort to determine *when* Anderson first gave specific substances to Bonds, not what substances he gave him. Thus, the question that forms the basis for Count Eleven was part of the

prosecutor's effort to determine the timing of Anderson's actions, and it is clear from the context that Bonds understood these questions to have to do with when he received specific substances from Anderson.

Bonds also argues that Bonds's reference to "discussions" in his answer shows that he misunderstood the question. That contention ignores the colloquy that came directly before Bonds's allegedly false statement. Initially, the prosecutor asked whether Anderson "had ever given [Bonds] anything or asked [Bonds] to take anything before the 2003 season." Bonds apparently chose to answer only that part of the question relating to whether Anderson asked him to take anything; he replied, "We never had those discussions." The prosecutor then sought to clarify by telling Bonds, "That's not my question, My question is…prior to the last season, you never took anything that he asked you to take, other than vitamins?" Bonds's interrupted the question to say, "No," and then unequivocally answered the question, "Right." In short, put in context, the prosecutor's question contains no ambiguity, and Bonds's answer – "Right" – displays no doubt as to its meaning. In any event, the question whether Bonds misunderstood the question, and therefore did not give a knowingly false answer, is a question for the jury to decide, not an issue to be resolved in a challenge to the sufficiency of the indictment.

### 6. Count Twelve

Count Twelve alleges that Bonds made a false statement in the following exchange:

> Q:      Okay. So first of all, Mr. Bonds, I guess I want to recheck with you or ask again exactly when you started getting the – what I'll call the recovery items, what you understood to be flax seed oil and the cream, when you started getting that from Greg Anderson. I think you said – but please correct me if I'm wrong – that you thought it was prior to this current baseball season.
>
>           But let me ask, I mean, is it possible it's actually a year before, after the 2000 – well, actually two years before, after the 2001 season? Because this first calender is dated December 2001 with "BB" on it and it's got a number of entries that I'd like to ask you about.
>
>           Were you getting items during that period of time from Greg?
>
> A:      No. Like I said, I don't recall having anything like this at during that time of year. It was toward the end of 2000, after the World Series, you know, when

my father was going through cancer.

Indictment ¶ 33; GJTR at 96-97.

Bonds argues (Mot. at 11) that the question forming the basis for Count Twelve "is, by any measure, unintelligible" and that "it is simply impossible to know what falsehood Mr. Bonds is accused of telling at this juncture in his testimony." Apparently, however, he does not seek dismissal of this count and demands only to know the question on which "the government will rest its case." Mot. at 12.

In fact, the colloquy quoted in Count Twelve contains only one question, and it is straightforward: was Bonds getting "flax seed oil and the cream" from Anderson in December 2001. The prosecutor told Bonds what he was asking about – "flax seed oil and the cream" – and, referencing the December 2001 calendar bearing the initials "BB," the prosecutor then asked Bonds whether he was getting those items from Anderson during that time period. There is no ambiguity in that question.

As the transcript and the indictment make clear, Bonds added, "It was toward the end of 2000, after the World Series, you know, when my father was going through cancer." The statement "toward the end of 2000" is not consistent with Bonds's prior testimony that Anderson first gave him flax seed oil and other substances in 2003; Bonds's reference to his father's cancer, however, shows that he meant to refer to the 2003 season. *See* GJTR at 23-24 (Bonds's testimony that his father died of cancer "at the end of 2003, 2003 season"). In addition, by saying "after the World Series," Bonds is referring to the 2002 World Series in which he and the Giants played. Whatever the effect of Bonds's apparent mistake, the indictment alleges only that Bonds testified falsely in denying that he received the substances "after the 2001 season," not that he falsely said that he received the substances from Anderson "toward the end of 2000." At trial, Bonds is free to argue that his apparent mistake in saying "toward the end of 2000" shows that he did not understand the question and that his unequivocal denial that he received the substances in 2001 is therefore not knowingly false, but Bonds's misstatement in his explanatory comment does not show that the question is ambiguous.

### 7. Count Fourteen

In Count Fourteen, the indictment alleges that the prosecutor asked, "And you weren't getting this flax seed oil stuff during that period of time [January 2002]?" Bonds answered, "Not that I recall. Like I said, I could be wrong. But I'm – I'm – going from my recollection it was, like, in the 2002 time and 2003 season." Bonds argues (Mot. at 12-13) that by including the phrase "I could be wrong" in the statement alleged to be false, the indictment alleged an "oxymoron." In other words, Bonds appears to argue, his statement that he could not recall getting flax seed oil in January 2002 cannot be false if his statement "I could be wrong" is also false.

Bonds's contention improperly seeks to dissect his answer and obscures its intent. The prosecutor clearly asked Bonds if he was getting the flax seed oil in January 2002, and Bonds answered that he could not recall getting it at that time and that he did recall getting it "in the 2002 time and 2003 season." To prove that this statement is false, the government must show that Bonds got the flax seed oil in January 2002 and that he lied in saying that he did not recall getting it then. The fact that Bonds interjected, "I could be wrong" does not make his statement "Not that I recall" any less false. Indeed, if that were true, a witness could always avoid a perjury charge simply by qualifying every false statement with "I could be wrong." In any event, Bonds's argument misapprehends the Court's inquiry. A "fundamental ambiguity" challenge raises the question whether the government's question is ambiguous, not whether the witness's answer is. If Bonds wishes to argue that his assertion in Count Fourteen is not false because it is inherently confusing, he is free to do so at trial. But whatever ambiguity resides in his answer is not a ground for finding the question "fundamentally ambiguous" or dismissing Count Fourteen.

## III. Count Fifteen is valid and should not be dismissed.

Count Fifteen charges that Bonds obstructed justice during his grand jury testimony by giving evasive, false, and misleading testimony, including the false statements that are alleged in the other counts of the indictment. In his initial motion to

dismiss, Bonds argued only that Count Fifteen (Count Five in the original indictment) was duplicitous. Bonds's current motion mentions that contention only in passing and instead raises new challenges to Count Fifteen. First, he argues that Count Fifteen should be dismissed because it rests in part on the false statements alleged in the other 14 counts of the indictment. Because, Bonds asserts, "most of those charges are defective," Count Fifteen must be dismissed as well. Second, Bonds claims that because Count Fifteen uses the phrase "including but not limited to the false statements made by the defendant as charged in Counts One through Fourteen of this indictment," it is "so vague as to deprive the defendant of the due process notice required to prepare a defense." Third, Bonds claims that Count Fifteen does not allege that the false statements on which it rests were material. None of these contentions has merit.

Bonds's first argument – that Count Fifteen must be dismissed because of ambiguities in other counts – misapprehends the theory behind Count Fifteen. That count alleges that Bonds's grand jury testimony as a whole was so evasive and perjurious that it constituted obstruction of justice. Accordingly, the essence of that count is Bonds's repetition of false statements, coupled with his evasive testimony in response to other questions posed by the prosecutor. In other words, this count rests on Bonds's grand jury testimony as a whole, not on individual questions and answers. For that reason, this count is not subject to dismissal even if Bonds's duplicity or ambiguity challenges result in the dismissal of other counts.

Bonds's second argument also fails. Bonds does not claim that 18 U.S.C. § 1503, the statute under which he is charged, fails to give him sufficient notice that his conduct was criminal. *See United States v. Williams*, 128 S. Ct. 1830, 1845 (2008) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."). Instead, he merely claims that Count Fifteen fails to include all of the conduct on which the government will rely to prove that Bonds obstructed justice. That contention is without

merit, because Count Fifteen rests solely on Bonds's grand jury testimony and thus gives Bonds adequate notice of the conduct that will be included in the government's proof at trial. In addition, by referencing the other counts of the indictment, Count Fifteen directs Bonds to 14 examples of testimony that contributed to his obstruction of justice. Moreover, even if Bonds's grand jury transcript did not give him adequate notice, he is not entitled to dismissal of the indictment. Instead, he should file an appropriate motion for a bill of particulars. *See United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983) ("A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense.... It is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy.") (citations omitted).

Finally, Bonds argues (Mot. at 13-14) that Count Fifteen must be dismissed because it fails to charge "that the purportedly false statements identified therein were material." Section 1503 does not contain the word "material," however, and the case on which Bonds relies, *United States v. Aguilar*, 515 U.S. 593 (1995), does not impose a materiality requirement for that statute. Instead, that case merely explained that an "endeavor" to obstruct justice "must have a relationship in time, causation, or logic with the judicial proceedings" that the defendant tried to obstruct. *Id*. at 599. Nothing in *Aguilar* says that when false statements form the basis for a violation of Section 1503, they must be material.

Even if a Section 1503 allegation requires proof that false statements forming the basis for an obstruction-of-justice allegation were material, Count Fifteen of the indictment is sufficient. Count Fifteen charges a violation of Section 1503 in the language of the statute, and that language implicitly or explicitly sets forth all of the elements of the offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 127 S. Ct. 782, 788 (2007) (indictment that charges offense in the language of the statute, but failed to expressly allege an element of the offense, was not defective).

## CONCLUSION

For the foregoing reasons, Bonds's Motion to Dismiss Counts I, II, V, VII, VIII, IX, XI, XII, XIV, and XV of the Superseding Indictment should be denied.


DATED: September 24, 2008                    Respectfully submitted,

                                             JOSEPH P. RUSSONIELLO
                                             United States Attorney


                                             _____/s/_____
                                             MATTHEW A. PARRELLA
                                             JEFFREY D. NEDROW
                                             JEFFREY R. FINIGAN
                                             J. DOUGLAS WILSON
                                             Assistant United States Attorneys