ALLEN RUBY (SBN 47109)
LAW OFFICES OF ALLEN RUBY
125 South Market Street #1001
San Jose, CA 95113
Telephone: (408) 998-8500 ext. 204
Facsimile: (408) 998-8503

DENNIS P. RIORDAN (SBN 69320)
DONALD M. HORGAN (SBN 121547)
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703

CRISTINA C. ARGUEDAS (SBN 87787)
TED W. CASSMAN (SBN 98932)
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

MICHAEL RAINS (SBN 91013)
RAINS, LUCIA & WILKINSON, LLP
2300 Contra Costa Blvd., Suite 230
Pleasant Hill, CA 94523
Telephone: (925) 609-1699
Facsimile: (925) 609-1690

Attorneys for Defendant
BARRY LAMAR BONDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 07 0732 SI |
| Plaintiff, | |
| vs. | Date: October 24, 2008<br>Time: 11:00 a.m.<br>Judge: The Honorable Susan Ilston |
| BARRY LAMAR BONDS, | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS I, II, V, VII, VIII, IX, XI, XII, XIV, AND XV OF THE SUPERSEDING INDICTMENT**

**TABLE OF CONTENTS**

I.  THE SUPERSEDING INDICTMENT'S INITIAL FALSE TESTIMONY
    COUNT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE
    THE CRITICAL ELEMENT OF MATERIALITY ............................. -1-

II. THE COURT MUST DISMISS COUNT SEVEN BECAUSE IT IS
    MULTIPLICITOUS AS TO COUNT SIX ................................. -1-

III. CERTAIN QUESTIONS AND RELATED ANSWERS IN SEVEN COUNTS
     OF THE SUPERSEDING INDICTMENT ARE FUNDAMENTALLY
     AMBIGUOUS AND MUST THEREFORE BE DISMISSED .................. -3-

    Count Two ......................................................... -4-

    Count Five ........................................................ -5-

    Count Eight ....................................................... -6-

    Count Nine ........................................................ -6-

    Count Eleven ...................................................... -7-

    Count Twelve ...................................................... -8-

    Count Fourteen .................................................... -9-

IV. THE OBSTRUCTION OF JUSTICE OFFENSE ALLEGED IN COUNT
    FIFTEEN  MUST BE DISMISSED BECAUSE IT CONTAINS ALL OF
    THE DEFECTS OF THE FIRST FOURTEEN COUNTS .................... -10-

CONCLUSION ............................................................. -11-

| | | |
|---|---|---|
| 1 | **TABLE OF AUTHORITIES** | |
| 2 | **CASES** | |
| 3 | *Apprendi v. New Jersey*, | |
| | 530 U.S. 466 (2000) | 1 |
| 4 | | |
| | *Bronston v. United States,* | |
| 5 | 409 U.S. 352 (1973) | 10 |
| 6 | *Gebhard v. United States*, | |
| | 422 F.2d 281 (9th Cir. 1970) | 2, 3 |
| 7 | | |
| | *United States v. Aguilar*, | |
| 8 | 756 F.2d 1418 (9th Cir. 1985) | 6 |
| 9 | *United States v. Feldhacker*, | |
| | 849 F.2d 293 (8th Cir. 1987) | 2 |
| 10 | | |
| | *United States v. Gaudin*, | |
| 11 | 515 U.S. 506 (1995) | 1 |
| 12 | *United States v. Graham*, | |
| | 60 F.3d 463 (8th Cir. 1995) | 3 |
| 13 | | |
| | *United States v. Lighte*, | |
| 14 | 782 F.2d 367 (2d Cir. 1986) | 3, 6 |
| 15 | *United States v. Olsowy*, | |
| | 836 F.2d 439 (9th Cir. 1988) | 2, 3 |
| 16 | | |
| | *United States v. Sainz,* | |
| 17 | 772 F.2d 559 (9th Cir.1985) | 7 |
| 18 | *United States v. Salas-Camacho*, | |
| | 859 F.2d 788 (9th Cir. 1988) | 2 |
| 19 | | |
| | *United States v. Stewart*, | |
| 20 | 420 F.3d 1007 (9th Cir. 1997) | 2 |
| 21 | **MISCELLANEOUS** | |
| 22 | World Anti-Doping Agency, *World Anti-Doping Code* 4.3 p 15-16 (2003) | 4 |

## I. THE SUPERSEDING INDICTMENT'S INITIAL FALSE TESTIMONY COUNT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE THE CRITICAL ELEMENT OF MATERIALITY

Defendant's opening motion to dismiss established that, under *Apprendi v. New Jersey*, 530 U.S. 466, *United States v. Gaudin*, 515 U.S. 506 (1995), and related precedent, the false testimony charge set forth in Count One of the Superseding Indictment is legally insufficient and must be dismissed because it fails to allege that defendant's underlying statement was material to the matter then before the grand jury. (See Motion, at 2-3) The government's response begins with a passing attempt to defend Count One on the merits, but concludes with a statement that the omission of the "materiality" allegation ". . . will be remedied, either by obtaining a second superseding indictment or obtaining a new indictment solely on that count that could be joined with the current indictment for trial." (See United States' Response ["Resp."], at 1) The government thus effectively concedes the merits of defendant's challenge to Count One, which accordingly must be dismissed.[1]

## II. THE COURT MUST DISMISS COUNT SEVEN BECAUSE IT IS MULTIPLICITOUS AS TO COUNT SIX

The government argues that because Mr. Bonds challenged Count Three of the First Indictment as duplicitous, he may not now challenge Counts Six and Seven of the Superseding Indictment as multiplicitous. (Resp., at 2) That argument is mere makeweight. It is unsupported by any reference to case law, and it makes no logical sense.

Imagine a case where the government charges in a single count three false statements: (a), (b), and (c). Imagine that (a) and (b) are identical, but (c) relates to a completely different subject. In such a case, the defendant could rightly challenge the count as duplicitous and demand that statement (c) be severed and charged as a separate count. If the government responded, for whatever reason, by severing statements (a) and (b) into separate counts, those counts would be multiplicitous, and a defendant could rightly challenge the charging redundancy. That is precisely what happened in this case. Count Three of the First Indictment was based on four statements: 3(a), 3(b), 3(c), and 3(d). (See First Indictment at 6-7) In his

---

[1] Defendant expresses no view at this point concerning the viability of the government's proposed remedy for the pleading defect, as that remedy is described in the foregoing quote.

Reply Memorandum in Support of Motion to
Dismiss Counts in the Superseding Indictment     -1-

1 | challenge to the First Indictment, Mr. Bonds argued that statement 3(d), because it addressed a
2 | different subject, was duplicitous. In that challenge, Mr. Bonds *conceded* that 3(b) and 3(c) were
3 | identical, so he made no argument that those statements were duplicitous. The government
4 | responded, for whatever reason, by severing the identical statements 3(b) and 3(c) into separate
5 | counts. But, as Mr. Bonds has consistently argued, those two statements are the same, and they
6 | may not be separately charged.

In both statements, Mr. Bonds gives the same response to the same question — whether he had received HGH from Anderson. The fact that the specific wording of the two statements was not identical does not save the government. (See Resp., at 4) As the controlling Ninth Circuit cases show, two questions may be the same even if they are rephrased and worded differently. *United States v. Stewart*, 420 F.3d 1007, 1013 (9th Cir. 1997); *United States v. Olsowy*, 836 F.2d 439, 443 (9th Cir. 1988). The relevant inquiry is not, as the government suggests, whether the wording was identical, but rather whether "the declarant was asked the same question and gave the same answer." *Stewart*, 420 F.3d at 1013. Ultimately, the inquiry is a functional one — whether it is possible that the defendant was answering one truthfully but the other falsely. *See id.*, *Gebhard v. United States*, 422 F.2d 281, 289-90 (9th Cir. 1970); *see also United States v. Feldhacker*, 849 F.2d 293, 297 (8th Cir. 1987) ("[S]eparate false statements may be charged in separate perjury counts if they require different factual proof of their falsehood."). In this case, if the government proves that the statement in Count Six was false, it also necessarily proves that the statement in Count Seven was false.

The government argues that even if the two statements were the same, Mr. Bonds may be charged twice because by repeating the same alleged falsehood twice, he further impaired the grand jury investigation. (Resp., at 5) That argument also founders, for reasons explained by governing Ninth Circuit precedent. In *Salas-Camacho*, the defendant repeated the same basic lie to two different government inspectors at two different times. In that circumstance, because the two inspectors had different "respective determinations" and "respective duties," the two lies could form two counts. *United States v. Salas-Camacho*, 859 F.2d 788, 791 (9th Cir. 1988). In *Gebhard*, by contrast, the defendant told the same lie twice at two different points in a grand jury proceeding. In that circumstance, because the defendant simply told the same lie twice to the

same grand jury, the two lies could *not* form two counts. *Gebhard*, 422 F.2d at 289-90; *see also United States v. Olsowy*, 836 F.2d 439, 443 (9th Cir. 1988) ("Once he misled the agent, repeating the lie adds little or nothing to the harm caused to the Secret Service's inquiry."); *United States v. Graham*, 60 F.3d 463, 467 (8th Cir. 1995) ("Although the statement was made to three different individuals . . . those individuals conducting the inquiries were acting in the same role with the same objective . . . .").

Counts Six and Seven are based on the same statement told to the same grand jury. If the government proves that the statement in Count Six was false, it will have necessarily prevailed on Count Seven as well. As a result, under Ninth Circuit law, the two counts are multiplicitous, and one of them must be dismissed.

### III. CERTAIN QUESTIONS AND RELATED ANSWERS IN SEVEN COUNTS OF THE SUPERSEDING INDICTMENT ARE FUNDAMENTALLY AMBIGUOUS AND MUST THEREFORE BE DISMISSED

In his opening motion, defendant moved to dismiss many counts because they complain of answers to questions that were fundamentally ambiguous as a matter of law. (See Motion, at 5-13) In its response, the government repeatedly contends that the issue of a given question's meaning and the responsive answer are matters *ordinarily* submitted to, and resolved by, the jury. (See Resp., at 5, et seq.) Nevertheless, the government does not and cannot dispute that certain questions can, on the basis of their content and context, cross the line into fundamental ambiguity, rendering them inactionable and subject to pre-trial dismissal in a false testimony prosecution. (See Motion, at 5-6)

As the Court of Appeal stated in *United States v. Lighte*, 782 F.2d 367, a question meets this definition ". . . when it 'is not a phrase with a meaning about which men [sic] of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986) (quoting *United States v. Lattimore,* 127 F.Supp. 405, 410 [D.D.C.]). With that definition and the others discussed in the opening motion (at 5-6) in mind, defendant briefly replies to the government's argument concerning the disputed Counts in turn, below.

**Count Two**

Count Two is fatally ambiguous. The basis for the charge is that when the prosecutor asked Mr. Bonds whether he had taken steroids or "anything like that," Mr. Bonds answered in the negative. (Superseding Indictment ["SI"], at 4:4-6)

The pharmacological term "steroid" is itself one that lacks a precise definition. When expanded to include "anything like that," the category of substances that might fit is so unclear that it cannot possibly form the basis of a valid false statement charge.

A simple example shows why. Suppose at trial the government proves that Mr. Bonds ingested androstenedione, commonly known as "andro." Andro is a hormone precursor — once ingested, the body can convert it into testosterone. The United States government has referred to andro not as an anabolic steroid per se, but rather as a steroid precursor.[2] The World Anti-Doping Agency (WADA) now classifies andro as a prohibited anabolic steroid, but it was not so classified until 2005.

If the government were to prove that Mr. Bonds received andro, would it thereby prove him guilty of Count Two? Is andro a steroid? If not, is it enough "like" a steroid that Mr. Bonds would have been required to answer the prosecutor's question in the affirmative?

Those questions defy easy resolution. Steroid pharmacology is dizzyingly complex. The list of substances prohibited by WADA, for example, changes yearly, and the standards for inclusion are, to put it mildly, somewhat unclear.[3] The list of substances that could be considered "anything like" steroids includes everything from pseudoephedrine to cortisone to creatine to glutamine. Even whey protein, which is derived from animal products, can contain substantial amounts of testosterone, and therefore can have steroid-like effects. Is it therefore "like" a steroid?

In short, the category defined by the term "steroid" is indeterminate, and the category

---

[2] See <http://www.cfsan.fda.gov/~dms/androqa.html> (last visited Sept. 30, 2008).

[3] A substance is included on the list of prohibited substances if it meets at least two of the following three criteria: (1) use of the substance has the potential to enhance performance, (2) use of the substance presents an actual or potential health risk, and (3) use of the substance "violates the spirit of the sport." World Anti-Doping Agency, *World Anti-Doping Code* § 4.3 at p. 15-16 (2003).

defined by the phrase "anything like a steroid" is radically indeterminate.  There is simply no way to know what counts.  There is thus no way to know what the government would have to prove in order to find Mr. Bonds guilty of Count Two.

The government's only real response to this problem is to argue that "Bond's straightforward answers . . . show that he understood the questions and did not believe they were ambiguous."  (Resp., at 8-9)  That argument misses the point.  An andro-using defendant might not believe that andro is "anything like" a steroid, but the government might argue to the contrary.  A jury would be left with the impossible task of deciding who is right.  But the very purpose of the *Bronston* clarity requirement is to prevent such loose, indeterminate inquiries in trials for perjury and false statements.

Put simply, the fact that a declarant might *answer* an ambiguous question straightforwardly does not relieve the government of its obligation to *ask* precise questions.  The ambiguity in the question that underlies Count Two is not minor or peripheral.  It is so fundamental that there is simply no way to know what exactly the government would have to prove in order to prove guilt.  Count Two must therefore be dismissed.

**Count Five**

The question challenged here asks in part whether, apart from certain physicians, "other individuals like Mr. Anderson or any associates of his" had ever injected anything into Mr. Bonds or taken anything out, to which Mr. Bonds said no.  (SI, at 6:10-27) Defendant has challenged as fundamentally ambiguous the question's reference to Mr. Anderson's "associates."  (Motion, at 9)  The government responds that the question and preceding colloquy "make clear" that the prosecutor was merely asking whether Mr. Anderson had taken such action, and that even if the references to Anderson's "associates" was unclear, the question was sufficiently specific, and thus actionable, to the extent that it inquired about Anderson alone.  (See Resp., at 9-10)

Defendant submits that he has indeed demonstrated that the question's reference to "associates" was one that did not carry a meaning "which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony,'" *Lighte*, supra, 782 F.2d at 375, and that the government has failed to

1 show otherwise. Accordingly, the Court should dismiss the portion of the question referring to
2 "associates" of Mr. Anderson and preclude the introduction of evidence aimed at proving the
3 conduct of such "associates" in connection with Count Five.

**Count Eight**

5 Count Eight charges Mr. Bonds with falsely stating that he was not getting any
6 testosterone *or* any human growth hormone from Anderson in January, 2002. (SI, at 8:21-23)
7 Mr. Bonds's pending motion seeks dismissal of the Count on the grounds that it is both
8 duplicitous and misleading. (Motion, at 9-10) The government responds that a disjunctive
9 question is not fundamentally ambiguous even if it contains an ambiguous phrase so long as "the
10 remainder of the question is sufficiently precise." (Resp., at 10)

11 This argument misses the point. As defendant's motion has stated, the problem with the
12 cited question and the reason it is misleading is not that a part of it is ambiguously phrased, but
13 rather that in its present form, it suffers from duplicity. As defendant observed in his motion to
14 dismiss the initial indictment, an indictment is duplicitous where it joins two or more single
15 offenses in a single count, thereby implicating defendant's rights to notice and a unanimous
16 verdict as well as his protection against double jeopardy. (See initial motion to dismiss, at 6-7,
17 citing *United States v. Aguilar*, 756 F.2d 1418 (9th Cir. 1985) and related precedent) Here,
18 Count Eight plainly alleges a purportedly false response concerning testosterone with a distinct,
19 purportedly false response concerning human growth hormone.

20 Given defendant's timely challenge to this patent defect, the government must either
21 elect one of the two questions as the basis for Count Eight or dismiss it. (See initial motion to
22 dismiss at 13-16) Defendant observes that, as that portion of the questions concerning human
23 growth hormone is multiplicitous as to the questions set forth in counts six and seven, that
24 portion of the question and defendant's response must, in any event, be dismissed as the alleged
25 factual predicate for Count Nine. (See Motion, at 9-10)

**Count Nine**

27 The parties agree that in the indictment's cited colloquy with the prosecutor, Mr. Bonds
28 described a number of events that had occurred at the ballpark on one occasion, including the
following: someone told him to try a cream; Anderson came to the ballpark; Anderson rubbed

him with some cream; Anderson said this would help him recover; and Anderson gave him some flax seed oil. In the wake of hearing that description, the prosecutor then asked Mr. Bonds, "When did *that* happen for the first time?", to which Mr. Bonds responded, "Not until 2003, this season." (SI, at 9:7-24; Motion, at 10-11; Resp., at 10) Defendant has argued that the question is irretrievably compound and therefore fundamentally ambiguous and inactionable. (Motion, at 10-11)

The government challenges the objection on the grounds that defendant had "set the context for Count Nine's question in his previous answer," that he therefore could not have misunderstood "the issue he himself raised." This response is nothing less than an evasion. In a false testimony prosecution, "[t]he burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston v. United States,* 409 U.S. 352, 360 (1973); see also *United States v. Sainz,* 772 F.2d 559, 564 (9th Cir.1985) ("A witness cannot be forced to guess at the meaning of the question to which he must respond upon peril of perjury.") The record — including the context of the questioning — shows that after Mr. Bonds described a number of discrete events, the prosecutor failed to specify which of them his question placed in issue. Absent such an effort by the prosecutor, persons of ordinary intellect could not agree as to which of these events Mr. Bonds was contemplating when he recalled its first occurrence, thereby rendering it impossible to determine whether his answer was true or false or, further, whether it was even material to the grand jury's inquiry. For that reason, Count Nine must be dismissed.

**Count Eleven**

Here the prosecutor asked Mr. Bonds whether, before the previous season, he had ever taken "anything" Anderson asked him to take "other than vitamins," and in response, Mr. Bonds said he had not *and* that they had not had "any other discussions." (SI at 11:8-12) Mr. Bonds has argued both that the nature of the substances placed in issue is fundamentally ambiguous, and that Mr. Bonds' reference to "discussions" demonstrates his understanding that he was not addressing the subject of substances ingested but, rather, the nature of his conversations with Mr. Anderson. (Motion, at 10-11)

The government contends that it is "clear from the context" that "Bonds understood these

questions as having to do with when he received specific substances from Anderson." (Resp., at 12) Tellingly, however, the government fails to identify the "context" purportedly establishing that the question was directed only at issues of timing rather than the nature of substances taken. Nor does the government cite or describe a single exchange preceding the allegedly false response — i.e., preceding the underlined response appearing in the superseding indictment at 11:10 — in which the "anything" contained in the question was specified for purposes of the question on which Count Eleven is based. There is thus no meaning attached to the "anything" as understood by Mr. Bonds on which, absent further questioning, jurors could reliably agree.

The government also disputes Mr. Bonds's argument that his comment — "We didn't have any other discussions" — which immediately follows his allegedly false response — "Right" — demonstrates that Bonds was addressing discussions rather than substances. (Resp., at 12) In this connection, the government observes that the specific question preceding Mr. Bonds's cited response purported to put the question of discussions aside and focus instead on the question of substances taken. (*Ibid*.) But the fact that the prosecutor *sought* to change the focus away from discussions with Anderson does nothing to alter the fact that Mr. Bonds's actual response as it appears in the superseding indictment at 11:10, unequivocally shows that, in fact, he remained focused on, and in his mind was answering a question about, that very matter. No reasonable juror could find a meeting of the minds concerning the matters placed at issue by the question and answer on which Count Eleven is founded, and it must therefore be dismissed.

**Count Twelve**

In the exchange alleged as the basis for this Count, Mr. Bonds was first told by the prosecutor that he had previously testified that the first time he received the cream or flaxseed oil from Greg Anderson was prior to the season just completed, i.e., 2003. (SI, at 11:24-28)

The following exchange ensued:

Q. But let me ask, I mean, is it possible it's actually a year before, after the 2000 — well, actually two years before, after the 2001 season? Because this first calendar is dated December 2001 with "BB" on it and its [sic] got a number of entries that I'd like to ask you about.

Were you getting items during that period of time from Greg?

1  A. <u>No. Like I said, I don't recall having anything like this at all during that time of year</u>. It was toward the end of 2000, after the World Series, you know, when my father was going through cancer.

(SI, at 12:1-12:8)

Defendant has challenged this Count primarily on the grounds that it is inherently and irremediably unintelligible. (Motion, at 11-12) The government begins by asserting that Mr. Bonds apparently does not seek dismissal of Count Twelve but instead "demands only to know the question on which 'the government will rest its case.'" (Resp., at 13, quoting Motion, at 12) This preliminary "observation" is unfounded: defendant invoked his right to understand the factual basis for Count Twelve in connection with a claim that the questioning recited in that Count was fatally defective in supplying him such notice. That, of course, is the reason that the caption and conclusion of defendant's motion, as well as the caption of the government's own motion, expressly refer to defendant's motion to dismiss count twelve, among others.

This point aside, the government argues that the transcript and indictment "make clear" that the question was directed only at whether Mr. Bonds was receiving flax seed oil and the cream from Anderson in December, 2001. (Resp., at 13) As summarized in the Motion (at 11-12), however, the transcript and indictment do no such thing. Furthermore, and in addition to its other implications as discussed in defendant's opening motion (*ibid.*), defendant's reference to having received these materials at the end of 2000 further demonstrates the absence of a joint understanding as to the meaning of the cited question. Count Twelve should accordingly be dismissed.

**Count Fourteen**

This Count is founded on the following exchange:

Q. And you weren't getting this flax seed oil stuff during that period of time [January 2002]?

A. <u>Not that I recall. Like I say, I could be wrong. But I'm – I'm – going from my recollection it was, like, in the 2002 time and 2003 season</u>.

(SI, at 13:10-13)

In his challenge to this Count, defendant observed that Bonds's answer that he recalled receiving flax seed oil "in the 2002 time" literally encompasses the January, 2002 time period to

Reply Memorandum in Support of Motion to
Dismiss Counts in the Superseding Indictment        -9-

1  which the prosecutor's question referred. (See Motion, at 12) Thus, were the prosecution to
2  prove actual receipt of the substance in January, 2002, defendant's answer to the cited question
3  would be literally true and is therefore inactionable as a matter of law. (*Ibid.*, citing *Bronston*,
4  supra, 409 U.S. at 361-62 [false statement claim cannot be based upon answer that is literally
5  true]) The government simply declines to respond to this key point, which must therefore be
6  deemed conceded.

7  In addition, even were the response construed as a denial of receiving the substance in
8  January, 2002 — and, under *Bronston*, it cannot be — Mr. Bonds's explanation that he "could be
9  wrong" in his recollection would render the charge that this explanation itself was a falsehood
10 nonsensical because it would be consistent with Mr. Bonds's first receipt of the substance at
11 other times, including earlier times. (Motion, at 12-13) The government claims that no such
12 construction or effect should be given the statement because it would render the government's
13 effort to prove its case more difficult (Resp., at 14), but, as *Bronston*, 409 U.S. at 360, and
14 related precedent make clear, it is the obligation of the *prosecutor* to precisely formulate and
15 follow up on answers he or she deems unsatisfactory before so serious a charge as giving false
16 testimony may be legitimately pursued. The prosecutors here patently failed in that attempt, and
17 it is they, not Mr. Bonds, who must bear the consequences of their failure.

**IV.   THE OBSTRUCTION OF JUSTICE OFFENSE ALLEGED IN COUNT FIFTEEN MUST BE DISMISSED BECAUSE IT CONTAINS ALL OF THE DEFECTS OF THE FIRST FOURTEEN COUNTS**

20 Defendant has presented various challenges to the obstruction of justice charge set forth
21 in Count Fifteen (Motion at 13-14), to which the government has submitted a related response
22 (Resp., at 14-16). Defendant considers the issues largely joined by the present briefing, but
23 notes the following concerning his claim that the defects rendering several of the false testimony
24 counts require the dismissal of Count 15 as well. On this point, the government essentially
25 asserts that the defects affecting the false testimony counts do not matter because Count 15
26 charges obstruction based on Mr. Bonds's repeated and evasive responses considered "as a
27 whole." (Resp., at 15) This response, however, ignores the obvious fact that invalidation of
28 *some* or *many* of the false testimony counts necessarily alters and diminishes the "whole" on
which the Count is founded. In this circumstance, the Court can have no assurance that the grand

jury, if directed to disregard the defective false testimony claims, would ever have indicted Mr. Bonds for a violation of section 1503 in the first instance.

Finally, while conceding that "Count Fifteen rests solely on Bonds's grand jury testimony" (Resp., at 16), the government argues that it can convict Mr. Bonds of obstructing the grand jury without proving that he made a *material* false statement under oath. (*Id.*). The government, however, fails to discuss the holding of *United States v. Aguilar*, 515 U.S. 593 (1995) that in an obstruction case, the government is required to prove that the defendant's actions had the "natural and probable effect" of interfering with the due administration of justice. How can it be sufficiently alleged that the grand jury was obstructed by false statements absent an accusation that those statements were material to the inquiry the grand jury was conducting?

For these reasons, and for the others stated in the opening motion, Count Fifteen, too, must be dismissed.

## CONCLUSION

For the foregoing reasons, together with those set forth in Mr. Bonds' opening motion, Counts One, Two, Five, Seven, Eight, Nine, Eleven, Twelve, Fourteen, and Fifteen of the Superseding Indictment must be dismissed.

Dated: October 8, 2008

Respectfully submitted,

LAW OFFICES OF ALLEN RUBY

ARGUEDAS, CASSMAN & HEADLEY, LLP

RAINS, LUCIA & WILKINSON, LLP

RIORDAN & HORGAN

By /s/ Dennis P. Riordan

By /s/ Donald M. Horgan
     Donald M. Horgan

Counsel for Defendant
BARRY LAMAR BONDS

Reply Memorandum in Support of Motion to
Dismiss Counts in the Superseding Indictment    -11-