*Gene William Eplett*
*1461 Sanchez Street, San Francisco, California 94131*



RECEIVED
DEC  4 2008
Richard W. Wieking
Clerk, U.S. District Court
Northern District of California

December 4, 2008

To:   Judge Susan Illston
      United States District Judge
      Northern District of California

Re:   Barry Lamar Bonds

Your Honor,

I urge you to dismiss the perjury charges against Mr. Bonds. The crimes Mr. Bonds is accused of were fabricated by the prosecutor. The Court must not allow itself to be used as an instrument of corrupt objectives at the expense of an innocent person.

The New York Times on Sept 4, 2008 said about this prosecution, "..what is disturbing is the way in which the feds are now conducting the case, with a vindictiveness smacking of unseemly obsession. If Bonds had taken steroids and told the truth, he would have been ruined. By not telling the truth, he would have been ruined. He was in a no-win situation." The prosecutor who abused his subpoena powers to call Mr. Bonds as a witness against himself knew this full well, but he called him anyway in clear violation of the Fifth Amendment protection against self incrimination.

In his majority opinion in the case of **Garrity v. New Jersey**, (1967), Justice William O. Douglass wrote, "Where the choice is between the rock and the whirlpool, duress is inherent in deciding to waive one or the other. The option to lose ones means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice is likely to exert such pressure upon an individual as to disable him from making a free and rational choice."

Barry Bonds was compelled to appear before the Grand Jury in response to a subpoena issued by the Federal Prosecutor. His refusal to answer questions during this compulsory hearing would reveal them to be questions to which he could not provide a truthful answer without incriminating himself. His silence would confirm for the general public that he juiced his performance, a stigma that his career could not withstand.

So, Mr. Bonds was forced to choose either self-incrimination or silence, a Hobson's choice resulting in the loss of his means of livelihood either way - i.e. the 'rock and the whirlpool' to which Justice Douglass alluded. Instead he lied, or so says the prosecutor who subsequently indicted him for perjury. If he told the truth there was no perjury. If he lied he did so under duress – duress imposed on him in violation of his Fifth Amendment rights.

The prosecutor clearly views the Fifth Amendment as a right only to remain silent in situations in which self incrimination might otherwise occur. But a superior legal doctrine is adherence to the literal meaning of the words in a statute, particularly the U.S. Constitution. The Fifth Amendment says, "No person shall be compelled to *be a witness* against himself." It doesn't say, "No person shall be compelled to *give evidence* against himself." Neither does it say "a person shall have a right to remain silent to avoid self incrimination." It says he shall not be *compelled to be a witness* in matters in which self incrimination may result.

This is not simply a matter of semantics. A person compelled to be a witness is forced to choose whether to implicate himself explicitly, by speaking, or implicitly by remaining silent. There is a fundamental difference between 'being a witness' and the act of 'witnessing' or 'giving evidence'. The word 'witness' as it occurs in the Fifth Amendment is not a verb denoting action; it is a noun ascribed to 'a person' and denoting that person's role. The authors of the Fifth Amendment were careful in their use of words. The verb form is used throughout the Fifth Amendment **except** where it pertains to the rights against self-incrimination. In stipulating the phrase "to be a witness" instead of "to give

evidence", or simply "to witness", the Fifth Amendment clearly affirms that evidence of guilt may not be extorted from a person suspected of wrongdoing by confronting him with allegations that his silence would substantiate.

As if the literal meaning of the Fifth Amendment were not enough to settle the matter, there is also precedent in the case of Garrity v. the State of New Jersey:

Appellants, New Jersey police officers, were questioned during the course of a state investigation concerning alleged traffic ticket "fixing." Each officer was warned that if he refused to answer, in accordance with New Jersey law, he would be subject to removal from office. The officers' answers to the questions were used over their objections in subsequent prosecutions, which resulted in their convictions. The officers appealed under 28 U.S.C. § 1257(2), to the U.S. Supreme Court which Held that:

"The threat of removal from public office under the forfeiture of office statute to induce the petitioners to forgo the privilege against self-incrimination secured by the Fifth Amendment rendered the resulting statements involuntary, and therefore *inadmissible in the state criminal proceedings.*

"The choice imposed on petitioners was one between self-incrimination or job forfeiture. Coercion that vitiates a confession as under Chambers v. Florida, 309 U. S. 227, and related cases can be "mental, as well as physical"; "the blood of the accused is not the only hallmark of an unconstitutional inquisition" (Blackburn v. Alabama, 361 U. S. 199, 206). Subtle pressures may be as telling as coarse and vulgar ones (Leyra v. Denno, 347 U. S. 556; Haynes v. Washington, 373 U. S. 503). The question is whether the accused was deprived of his 'free choice to admit, to deny, or to refuse to answer' (Lisenba v. California, 314 U. S. 219, 241)."

Could Mr. Bonds have simply refused to appear before the Grand Jury? He could not. He had no prescriptive right to reject or ignore the subpoena because he was not briefed as to the questions he would be asked. The Grand Jury might plausibly have been seeking merely his informed testimony about drug use in professional sports. While he may have surmised that he would be asked about his own drug use, Mr. Bonds did not *in fact* have the information ahead of time with which to invoke his right not to appear. In any event, the choice to appear

or not, whether in contempt of court or not, is irrelevant because a refusal to honor the subpoena would have resulted in the same career damage as agreeing to appear and then refusing to answer.

In *Garrity v. New Jersey* The Supreme Court, in the words of Mr. Justice Douglas, found that, "We conclude that policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights."

We therefore ask these four questions:

(1) Should professional athletes whose livelihoods depend on the continuing good regard of the public be included in those protections along with policemen, teachers and lawyers? Indeed, can *anyone* be excluded from those protections where the loss or severe curtailment of his means of livelihood is the likely consequence of evading potentially self-incriminating questions under oath?

(2) Did the choice between "the rock and the whirlpool" with which Mr. Bonds was confronted on one hand by the degradation of his means of livelihood resulting from refusal to answer, and by the prospect of giving potentially self-incriminating information on the other, render the entire proceedings in which this Hobson's choice was imposed upon him both invalid and extralegal?

(3) Did the prosecutor, knowing the questions he planned to ask Mr. Bonds, violate his Constitutional rights by compelling him be a witness against himself?

(4) Having thus been compelled in violation of his constitutional rights, was Mr. Bond's oath thereby voided, freeing him to say anything, true or not, as one may do in casual conversation that has no standing under the law?

We assert that the answer to all these questions is 'yes', and that each affirmative answer, let alone all four together, demands that the perjury charges against Barry Bonds be dismissed.

Sincerely,

Gene W. Eplett
(415) 290-4672