JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA  (NYSBN 2040855)
JEFFREY D. NEDROW (CABN 161299)
JEFFREY R. FINIGAN (CABN 168285)
J. DOUGLAS WILSON (DCBN 412811)
Assistant United States Attorneys

150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone: (408) 535-5045
Facsimile:  (408) 535-5066
Email: jeff.nedrow@usdoj.gov


Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0732-SI |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' SUPPLEMENTAL** |
| | ) | **FILING IN RESPONSE TO** |
| v. | ) | **DEFENDANT'S MOTION IN LIMINE** |
| | ) | **TO EXCLUDE EVIDENCE** |
| BARRY BONDS, | ) | |
| | ) | Judge: Honorable Susan Illston |
| Defendant. | ) | |
| | ) | |

Greg Anderson's out-of-court statements to James Valente at the time he submitted the

defendant's blood and urine specimens to Balco should be admitted at trial pursuant to

Fed.R.Evid. 801(d)(2)(C) as statements authorized by Bonds, and pursuant to Fed.R.Evid.

801(d)(2)(D), as statements made by an agent of Bonds, "concerning a matter within the scope of

the agency or employment."

    A.  Fed.R.Evid. 801(d)(2)(C) and 801(d)(2)(D)

A statement is not hearsay where it is "offered against [the] party" and either made "by a

person authorized by the party to make a statement concerning the subject[,]" Fed.R.Evid.

Dockets.Justia.com

801(d)(2)(C), or made by an agent "concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed.R.Evid. 801(d)(2)(D). Speaking authority can be either "expressly or implicitly" bestowed upon an individual. *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor*, 262 F. Supp. 2d 251, 260 (S.D.N.Y. 2003) (citing 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 801.32 at 801-60). The person making the statements must have the authority to speak on a particular subject on behalf of the party the admission is to be used against. *Id.* (citing 30B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Evidence, § 7022); *Precision Piping and Instruments , Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 619 (4th Cir. 1991).

Rule 801(d)(2)(D) requires "a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's employment." *Harris v. Itzhaki,* 183 F.3d 1043, 1054 (9th Cir. 1999) (citing *Breneman v. Kennecott Corp*., 799 F.2d 470, 473 (9th Cir. 1986)). The existence of an agency relationship under Rule 801(d)(2)(D) is a question for the court under Fed.R.Evid. 104(a) and must be proved by substantial evidence. *United States v. Flores,* 679 F.2d 173, 178 (9th Cir. 1982). "The contents of the statement shall be considered but are not alone sufficient to establish . . . the agency or employment relationship and scope thereof." Fed.R.Evid. 801(d)(2).

B. Anderson's identifications of the specimens are admissible pursuant to 801(d)(2)(C)

In the grand jury, Valente testified that he made entries identifying specimens belonging to Bonds when Anderson told him that the samples belonged to Bonds. See Exhibit A (5/25/06 grand jury transcript of testimony of James Valente, p. 55).

Bonds testified in the grand jury that he had authorized Anderson, as his trainer, *i.e.* his employee, to take his blood and urine samples to Balco in order to get them tested. Pertinent excerpts of Bonds's testimony include the following:

Q: Did he [Anderson] ever ask you to provide blood samples or urine samples for testing?

A: Yes.

Q: When did he start asking you to do that, right off the bat or as time went on?

A: I don't know, I believe it was maybe 2000, 2001, I believe so.

*          *          *

Q: Okay. How many times did you provide blood samples for testing? Was that a common thing or just happen a few times? Or what would you estimate?

A: I don't know, maybe five or six times, maximum.

Q: And would that be all within the 2000, 2001 period, or would it be over the last several years?

A: Over the last – all the way until now, this year.

Q: And regarding the urine samples, – let me ask, I guess, the same questions regarding the urine samples. How often did you provide those?

A: Oh, I can't recall. Maybe four times, maybe. I don't recall.

See Exhibit B (12/4/03 grand jury testimony of Barry Bonds), pp. 17-18.

Q: Did you provide the blood samples directly to Mr. Anderson?

A: Yeah I had my own personal doctor come up to draw my blood. I only let my own personal doctor touch me. And my own personal doctor came up and drew my blood and Greg took it to Balco.

Q: What about the urine samples?

A: Same thing, come to my house, here, go.

Exhibit B, p. 20.

Q. Yes, I agree, that looks like a urine test, yes.

A: I gave samples to Greg. Greg took them to Balco.

Exhibit B, p. 76.

This testimony confirms that the defendant authorized Anderson to take his urine specimens to Balco for testing. Common sense dictates that Anderson identified the specimens; otherwise Anderson himself would not have known which athlete's urine he had submitted. Bonds also told Stan Conte, the former Giants trainer, that Anderson would take his blood and analyze it. See Exhibit C (5/25/06 testimony of Stan Conte), p. 35.

## C. Anderson's identifications of the specimens are admissible pursuant to 801(d)(2)(D)

Anderson's statements are further admissible pursuant to Rule 801(d)(2)(D). In order to admit the statement under this subsection of Rule 801(d), the Court must find that Anderson served as Bonds's "agent or servant," and that the statement was made "concerning a matter within the scope of the agency or employment."

Bonds identified Anderson as his trainer in his grand jury testimony. Valente and multiple athlete witnesses who knew Bonds and Anderson all described Anderson as Bonds's trainer. Anderson's statements identifying the urine as belonging to Bonds logically emanate from Anderson's agency relationship with Bonds as his trainer. Furthermore, Anderson was delivering urine specimens for numerous other athletes, and thus needed to identify Bonds's to ensure he knew which belonged to Bonds. Anderson's statements identifying the urine specimens as belonging to Bonds were within the context of their trainer-trainee relationship, and for the purpose of furthering the ends of getting Bonds's urine and blood tested. Anderson was acting as Bonds's agent, and used the simplest manner imaginable to keep the specimens straight, by using his client's name.

In *United States v. Shunk*, 881 F.2d 917 (10th Cir. 1989), the defendant's brother sold a pistol to an undercover officer and made statements that the defendant was the actual owner of the pistol. *Id.* at 918. The Tenth Circuit found that the brother's statements were admissible under Rule 801(d)(2)(D) because: (1) the brother had indicated that he was acting as the defendant's agent; and (2) the defendant had ratified his agent's conduct through subsequent statements. Similarly, in *United States v. Jones*, 766 F.2d 412 (9th Cir. 1985), the government sought to introduce out-of-court statements made to an extortion victim by two men who had come to pick up ransom money. *Id.* at 415. The Court found that independent evidence, including the testimony of a third party whom the defendant had tried to recruit for the scheme, and the victim's observation of the defendant in the vicinity of the attempted money pick up, was sufficient to support both the existence of an agency relationship and admission of the statements against the defendant pursuant to Fed.R.Evid. 801(d)(2)(D). In this case, the evidence of both the existence of the agency relationship and the defendant's authorization to his agent to make the

statements is considerably stronger.

Anderson's identification of the urine specimens as belonging to Bonds squarely fits the requirements of Rule 801(d)(2)(D). Anderson, as Bonds's trainer, was functioning as Bonds's agent and employee when he delivered Bonds's the specimens to Balco. Anderson made the identifying statements during the course of delivering the specimens, a matter clearly within the scope of his employment. Bonds has repeatedly ratified Anderson's agency, in public and in the grand jury, through his statements that he had his urine and blood specimens tested at Balco, and his testimony that he knew Anderson was taking the specimens to Balco and approved of it.

D. Request For Separate Rulings

Should the Court find that Anderson's identifying statements are inadmissible, the government asks for a separate ruling on whether the log sheets are nevertheless admissible as Balco business records, thus providing the nexus to the urine and blood test reports.

## CONCLUSION

For the above-stated reasons, he government respectfully requests a ruling of the Court providing for the admissibility of the above-summarized statements pursuant to Fed.R.Evid. 801(d)(2)(C) and 801(d)(2)(D).

DATED: February 9, 2009   Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


     /s/
MATTHEW A. PARRELLA
JEFFREY D. NEDROW
JEFFREY R. FINIGAN
J. DOUGLAS WILSON
Assistant United States Attorneys