JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CASBN 161299)
JEFFREY R. FINIGAN (CASBN 168285)
J. DOUGLAS WILSON (DCBN 412811)
Assistant United States Attorneys

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-7232
    Facsimile: (415) 436-7234
    Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. CR 07-0732 SI |
| Plaintiff, | |
| | UNITED STATES' TRIAL MEMORANDUM |
| v. | |
| BARRY LAMAR BONDS, | Trial: March 2, 2009 |
| | Time: 8:30 a.m. |
| Defendant. | Court: Hon. Susan Illston |

## I.  Indictment/Introduction

The defendant is charged in counts one through ten of the second superseding indictment with making false declarations before the grand jury in violation of 18 U.S.C. § 1623(a) and in count eleven with obstructing justice in violation of 18 U.S.C. § 1503.  In short, the defendant

U.S. TRIAL MEMORANDUM
CR 07-0732 SI

testified before the grand jury on December 4, 2003, in connection with the Internal Revenue Service – Criminal Investigation Division's (IRS – CID) investigation into the distribution of performance enhancing drugs and money laundering of the proceeds therefrom by Balco Laboratories and individuals associated with Balco, including Greg Anderson, the defendant's personal trainer at the time. During the investigation, agents seized numerous documents and files during the execution of search warrants showing that the defendant had connections with Balco and Anderson. Those connections included the defendant's use of performance enhancing substances with the assistance of Balco and Anderson. Accordingly, the defendant was subpoenaed before the grand jury as a relevant witness. The defendant appeared for his testimony on December 4, 2003, with his attorney. The defendant requested and was granted limited immunity for his testimony that excluded any immunity for making false statements. During the testimony, the defendant was asked, among other things, about the extent of his relationship with Balco and Anderson and whether the defendant had ever used steroids or other performance enhancing substances from Balco or Anderson. The defendant provided knowingly false statements before the grand jury in response to the aforementioned lines of inquiry including, but not limited to, that he never knowingly used performance enhancing substances, and that neither Anderson nor anyone associated with Anderson ever injected him with any substance.

## II.   Brief Summary of Proof Anticipated at Trial

The evidence at trial will show as follows. On September 3, 2003, as part of its investigation of the illegal steroid distribution activities of Balco Laboratories, the government executed a search warrant at Balco's business premises in Burlingame, California. Federal agents found documents indicating the illegal distribution of anabolic steroids and other performance-enhancing drugs to dozens of athletes in a variety of sports.

Some of the documents seized from Balco indicated that the defendant was using Balco's services to determine whether anabolic steroids were detectable in his blood and urine. Agents found the results of numerous blood tests for the defendant. Agents further found log sheets that reflected a coding system in which the defendant's urine samples were assigned numbers and

then referred out for urine testing at Quest Diagnostics, a national drug testing laboratory. The log sheets and the drug test results found at Balco that corresponded to the numbers entered under the defendant's name on the log sheets indicated that the defendant's urine tested positive for anabolic steroids on three separate occasions in 2000 and 2001. On each occasion, the defendant tested positive for the injectable steroid methenelone. On two of these three occasions, the defendant also tested positive for the injectable steroid nandrolone. Other results showed negative tests for the presence of anabolic steroids but reflected testosterone-to-epitestosterone ratios that strongly indicated the use of anabolic steroids by the defendant.

At the time of the search, Victor Conte and James Valente, another Balco employee, voluntarily provided statements in which they identified Greg Anderson as a participant in the scheme. Based on these statements and corroborating documents found during the search, agents requested and received a separate search warrant for Anderson's residence. There, agents found handwritten notes, doping calendars (some with the defendant's name or initials), approximately $60,000 in cash, drug ledgers and financial notes indicating that the defendant and other athletes received and paid for illegal athletic performance-enhancing drugs from Anderson. Anderson voluntarily provided a statement in which he confessed to distributing anabolic steroids and other performance-enhancing drugs to several of the athletes. When asked about documents containing references to the defendant, Anderson declined to provide any further statements. The documents from Anderson's residence provide a detailed record of steroid distribution from Anderson to the defendant from 2001 to 2003, with entries referring to injectable steroids ("test. 1cc"), human growth hormone, and other illegal performance-enhancing drugs.

The evidence at trial will show that the defendant testified before the grand jury on December 4, 2003, in connection with the Balco investigation. He was asked about the aforementioned evidence – to the extent the government possessed it at the time of his testimony – indicating his use of performance enhancing substances in the course of his relationships with Balco and Anderson. In response to this line of questioning, the defendant provided numerous false and misleading statements as set forth in the second superseding indictment. The evidence will show that these false statements were material to the investigation being conducted with the

grand jury.

In addition to the evidence discovered at Balco and at Anderson's residence, the evidence will also show that the defendant tested positive in June of 2003 in connection with Major League Baseball's 2003 drug testing program. It is also anticipated that several witnesses, including the defendant's mistress, former personal assistants, and a former teammate, will testify at trial about witnessing the defendant being injected and about statements the defendant made admitting his use of steroids. Another witness will also testify about incriminating statements by the defendant related to Anderson's steroid dealing, the money found at Anderson's home, and the calendar's found at Anderson's home with the defendant's name or initials on them. The defendant made the statements approximately one month after the execution of the search warrant on Anderson's residence.

The trial evidence will also show that in early 2003, Steve Hoskins, a former associate of the defendant's recorded an in-person conversation with Anderson. Among other things, the recording contains Anderson's discussion of injecting the defendant and other statements consistent with the administration of anabolic steroids to the defendant.

Two expert witnesses will also testify. One of these experts is Dr. Larry Bowers, the medical director for the United States Anti-Doping Agency, who will testify that steroid users develop such symptoms as increased muscle mass, shrunken testicles, acne on the upper back, moodiness, and an erratic sexual drive. The government will introduce testimony from several percipient witnesses close to Bonds who will testify that Bonds exhibited some or all of these symptoms between approximately 1998 and 2003. Dr. Bowers will further testify that the urine and blood test results for Bonds reflect steroid use, and that the steroids involved are usually, though not exclusively, injectable steroids. The government will also call Dr. Don Catlin, one of the world's leading drug testing experts and the researcher who discovered "the clear," also known as tetrahydragestrinone or "THG." Dr. Catlin will testify that he tested the defendant's urine sample submitted to Major League Baseball in 2003 and determined that the sample was positive for THG and Clomid, an anti-estrogen drug typically used by steroid users to "jump-start" the replenishment of natural testosterone following its suppression by the use of anabolic

steroids. In addition, Dr. Catlin will testify that the sample is positive for exogenous, that is, foreign, testosterone, itself an anabolic steroid and controlled substance under federal law.

**III.    Evidentiary, Procedural & Legal Issues**

Other than the evidentiary motion currently under submission to the Court, the government respectfully requests that the Court reiterate its ruling at the hearing on the defendant's Motion to Exclude Evidence on February 5, 2009. Specifically, that the defense is barred from mentioning or cross-examining any witness with the TIGTA report or the facts underlying it unless a basis for doing so is first established to the Court's satisfaction outside the presence of the jury.

As for procedure, the government raises four issues. First, the government respectfully requests that the Court order any witnesses the parties intend or contemplate calling at trial, with the exception of Special Agent Novitzky, who will be seated at counsel table, shall be excluded from the courtroom during trial. Second, the government hereby advises the Court that it intends to call Greg Anderson as a witness at trial. In the event Anderson refuses to comply with the subpoena, the government will respectfully request that the Court immediately conduct contempt proceedings and imprison Anderson until he either cures his contempt or the trial ends, whichever occurs first. The government cannot estimate what impact this scenario will have on the trial schedule. Third, there are several government witnesses who will be required to travel to San Francisco to testify at trial. At the end of a witness' testimony, it is common for parties to request that the witness remain subject to recall. In the event the defense wishes to recall a government witness, the government respectfully requests that the Court order that the defense bear the costs of recalling the witness. Fourth, the government notes that, because a jury questionnaire will be used, the government is not submitting proposed voire dire questions with

///

///

///

these pretrial filings. Nevertheless, if the Court requests such a submission, the government will do so forthwith.

DATED: February 13, 2009

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney


_____/s/_____
MATTHEW A. PARRELLA
JEFFREY D. NEDROW
JEFFREY R. FINIGAN
J. DOUGLAS WILSON
Assistant United States Attorneys

U.S. TRIAL MEMORANDUM
CR 07-0732 SI                                             6