JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYSBN 2040855)
JEFFREY D. NEDROW (CABN 161299)
JEFFREY R. FINIGAN (CABN 168285)
J. DOUGLAS WILSON (DCBN 412811)
Assistant United States Attorneys

150 Almaden Boulevard, Suite 900
San Jose, CA 95113
Telephone: (408) 535-5045
Facsimile: (408) 535-5066
Email: jeff.nedrow@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BARRY BONDS, <br><br> Defendant. | No. CR 07-0732-SI <br><br> **UNITED STATES' SUPPLEMENTAL BRIEF IN SUPPORT OF ADMISSIBILITY OF EXPERT OPINION TESTIMONY PROFFERED BY THE GOVERNMENT PURSUANT TO *DAUBERT*** <br><br> Judge: Honorable Susan Illston |

Defendant Bonds challenges the government's showing that Dr. Larry Bowers is qualified to testify as an expert that steroid users develop symptoms such as increased muscle mass, shrunken testicles, acne on the upper back, moodiness, and an erratic sex drive, among other symptoms. Bonds asserts that "Dr. Bowers' testimony concerning these side-effects fails to pass muster under [Federal Rule of Evidence] 702 because (1) it is not based upon sufficient facts or data, (2) it is not the product of reliable principles and methods, and (3) the witness has not applied the principles and methods reliably to the facts of this case." Bonds Reply at 24. Bonds also argues that Dr. Bowers's testimony is contrary to "some peer-reviewed literature" or

"inconsistent with the latest available scientific literature." Bonds Reply at 25, 26. Bonds further challenges Dr. Bowers's qualifications to testify on the side effects of human growth hormone, the use of insulin in connection with performance-enhancing drugs, and related matters.

With this pleading, the government is submitting a supplemental declaration from Dr. Bowers that addresses Bonds's objections. Dr. Bowers's supplemental declaration, taken in conjunction with his January 26, 2009 declaration on file with the Court, is sufficient to allow the Court to find that he is qualified as an expert on the physiological and mental effects of steroids and other performance-enhancing drugs.

As summarized in Dr. Bowers's supplemental declaration, the physiological side effects of steroid use on the physique are so well documented in the scientific literature as to be beyond any serious dispute, and are generally accepted within the medical community. Based upon the instant filing and the government's original filing, the government respectfully requests that the Court find the government's expert testimony admissible under Rule 702. The government believes that this finding can be made from the government's filings and does not require a time consuming evidentiary hearing outside of the presence of the jury.

ARGUMENT

THE GOVERNMENT'S EXPERT TESTIMONY IS ADMISSIBLE UNDER THE *DAUBERT* STANDARD, WHICH IS A FLEXIBLE RULE OF INCLUSION, NOT EXCLUSION

As the government noted in its initial brief, testimony from a qualified expert "is admissible pursuant to Rule 702 if it is both relevant and reliable." *Elsayed Mukhtar v. California State University,* 299 F.3d 1053, 1063 (9th Cir. 2002); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). As the Supreme Court explained, "[t]he inquiry envisioned by Rule 702 is…a flexible one." *Daubert*, 509 U.S. at 594. Although the Court in *Daubert* provided a list of factors for determining whether expert testimony is reliable, *id*. at 593-94, a court should not "mechanically apply the *Daubert* factors," *Hangarter v. Provident Life & Accident Insurance Co.*, 373 F.3d. 998, 1017 (9th Cir. 2004), because *Daubert*'s list of specific factors "neither necessarily nor exclusively applies to all experts or

every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). Instead, the *Daubert* factors are meant to be "helpful, not definitive." *Id*. at 151. A district court has "broad latitude in determining whether an expert's testimony is reliable" and "in deciding how to determine the testimony's reliability." *Elsayed Mukhtar,* 299 F.3d at 1064. Although a court should make "a preliminary determination that [a proffered] expert's testimony is reliable," *Elsayed Mukhtar*, 293 F.3d at 1063, a court need not hold a separate *Daubert* hearing before admitting expert testimony. *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000).

The case law establishes that even without a supplemental declaration, Bonds's objections to Dr. Bowers seek to set the bar to the admission of expert testimony too high. As the Ninth Circuit has recognized, the Supreme Court's decision in *Daubert* sets a "liberal standard of admissibility." *Dorn v. Burlington Northern Santa Fe Railway*, 397 F.3d 1183, 1196 (9th Cir. 2005). As the Court explained in *Dorn*, "[t]he Supreme Court in *Daubert* …was not overly concerned about the prospect that some dubious scientific theories may pass the gate keeper and reach the jury…; indeed, the Court said, 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id*. at 1196. Although there is nothing "shaky" about Dr. Bowers's proffered expert testimony, the Court's admonition in *Daubert* makes clear that, as the court of appeals has held, "the reasonableness of the assumptions underlying the experts'…analysis [or] criticisms of an expert's method of calculation [are] matters for the jury's consideration in weighing that evidence." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001); *see also Kumho Tire Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999) (expert testimony should be admitted if it falls within "the range where experts might reasonably differ, and where the jury must decide among the conflicting views").

In short, Bonds's disagreement with Dr. Bowers's conclusions is not a basis for excluding that testimony if Dr. Bowers has sufficient "specialized knowledge" and he relied on a reasonable methodology in arriving at his opinions. His two declarations plainly meet the "specialized knowledge" standard, and demonstrate a sound methodology in arriving at his conclusions. That methodology is an entire professional career devoted to studying and

combating the use of anabolic steroids, human growth hormone, and other performance-enhancing drugs in sports. The first declaration establishes Dr. Bowers as one of the leading experts in the field of anti-doping; he is the senior education and research director of the agency responsible for detecting, and eliminating, the use of anabolic steroids, human growth hormone, and other performance-enhancing drugs by Americans participating in Olympic sports. The supplemental declaration provides greater detail, and a more specific description, of the sources relied upon by Dr. Bowers in accumulating this "specialized knowledge." The supplemental declaration establishes Dr. Bowers's familiarity with the side effects of anabolic steroids and human growth hormone through specific examples of scientific literature, peer-reviewed studies, interviews with athletes, and other sources of information considered by Dr. Bowers. Dr. Bowers's familiarity with these materials demonstrates that he possesses a basis of "specialized knowledge" sufficient to permit him to testify as an expert, and express his expert opinion, on the subject matter of the side effects of anabolic steroids and human growth hormone.

Bonds is free to cross-examine Dr. Bowers about his conclusions and to confront him with scientific literature that, Bonds believes, contradicts Dr. Bowers's conclusions. Moreover, upon giving proper notice to the government, *see* Fed. R. Crim. P. 16(b)(1)(C), and complying with Federal Rule of Evidence 702, Bonds may call his own expert to give testimony that contradicts Dr. Bowers. (No such notice has been provided at the time of this filing). However, possessing such cross-examination material – which is all the defense exhibited at the previous hearing on this matter on February 5, 2009 – is not a basis for conducting a *Daubert* hearing. Indeed, if all the defense has to do is provide a sample of its cross-examination, every proffered expert will hereafter be subject to a Daubert hearing. That is precisely the inefficiency *Daubert* aims to avoid.

In sum, the Court is not presented with the circumstances that *Daubert* was designed to govern, where the Court needs to function as a gatekeeper and exclude dubious expert testimony "to ensure that the courtroom door remains closed to junk science." *In re Joint*, 52 F.3d 124, 1135 (2d Cir. 1995). Dr. Bowers's opinions are precisely the type of reliable expert testimony that is admissible under Rule 702 and *Daubert*. Dr. Bowers's expert testimony should

accordingly be found admissible under the tenets of *Daubert.*

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court find the Dr. Bowers's expert testimony admissible at trial pursuant to *Daubert*.

DATED: February 13, 2009

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
MATTHEW A. PARRELLA
JEFFREY D. NEDROW
JEFFREY R. FINIGAN
J. DOUGLAS WILSON
Assistant United States Attorneys