USA v. Bonds Doc. 161

```
 1
 2                                          PAGES 1 - 19
 3                   UNITED STATES DISTRICT COURT
 4                 NORTHERN DISTRICT OF CALIFORNIA
 5   BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE
 6   UNITED STATES OF AMERICA,    )
                                  )
 7              PLAINTIFF,        )
                                  )
 8     VS.                        )       NO. CR 07-0732 SI
                                  )
 9   BARRY LAMAR BONDS,           )
                                  )
10              DEFENDANT.        )
     _____)
11
                                      SAN FRANCISCO, CALIFORNIA
12                                    WEDNESDAY, NOVEMBER 5, 2008
13                    TRANSCRIPT OF PROCEEDINGS
14   APPEARANCES:
15   FOR PLAINTIFF:          UNITED STATES ATTORNEY
                             450 GOLDEN GATE AVENUE
16                           SAN FRANCISCO, CALIFORNIA  94102
                        BY:  J. DOUGLAS WILSON
17                           MATTHEW A. PARRELLA
                             JEFFREY DAVID NEDROW
18                           JEFFREY R. FINIGAN
                             ASSISTANT UNITED STATES ATTORNEYS
19
     FOR DEFENDANT:          RIORDAN & HORGAN
20                           523 OCTAVIA STREET
                             SAN FRANCISCO, CA  94102
21                      BY:  DENNIS PATRICK RIORDAN
                             ATTORNEY AT LAW
22              (APPEARANCES CONTINUED ON FOLLOWING PAGE)
23   REPORTED BY:            JAMES YEOMANS, CSR #4039, RPR
                             OFFICIAL REPORTER
24              COMPUTERIZED TRANSCRIPTION BY ECLIPSE
25
```

JAMES YEOMANS - OFFICIAL REPORTER - (415)863-5179

Dockets.Justia.com

```
 1  APPEARANCES:  (CONTINUED)

 2  FOR DEFENDANT:          LAW OFFICES OF
                            ALLEN RUBY
 3                          ATTORNEY AT LAW
                            125 SOUTH MARKET STREET, SUITE 1001
 4                          SAN JOSE, CA  95113

 5

 6  FOR DEFENDANT:          ARGUEDAS, CASSMAN, HEADLEY
                            803 HEARST AVENUE
 7                          BERKELEY, CA  94710
                       BY:  CRISTINA C. ARGUEDAS
 8                          TED W. CASSMAN
                            ATTORNEYS AT LAW
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    WEDNESDAY, NOVEMBER 5, 2008                           4:00 P.M.
 2              (THE FOLLOWING PROCEEDINGS WERE HEARD IN OPEN COURT:)
 3         THE CLERK:  CALLING CRIMINAL CASE NUMBER CR 07-0732,
 4    UNITED STATES VERSUS BONDS.
 5         APPEARANCES PLEASE, COUNSEL.
 6         MR. WILSON:  GOOD AFTERNOON.
 7         DOUG WILSON.  WITH ME IS MATT PARRELLA, JEFF NEDROW
 8    AND JEFF FINIGAN FOR THE UNITED STATES.
 9         MR. RIORDAN:  GOOD AFTERNOON.
10         DENNIS RIORDAN FOR DEFENDANT BONDS, WITH ALLEN RUBY,
11    CHRIS ARGUEDAS AND TED CASSMAN.
12         THE COURT:  GOOD AFTERNOON.
13         OKAY.  THIS IS DEFENDANT'S MOTION, I READ YOUR PAPERS,
14    I'LL BE HAPPY TO HEAR ANYTHING YOU WANT TO ADD.
15         MR. RIORDAN:  DO YOU MIND IF I SIT, YOUR HONOR?
16         THE COURT:  NO, THAT'S FINE.
17         MR. RIORDAN:  I WILL BE BRIEF, YOUR HONOR, SINCE --
18    SIMPLY BECAUSE I THINK THE WRITTEN SUBMISSIONS ARE FAR MORE
19    COMPLETE THAN ANYTHING YOU'RE GOING TO HEAR THIS AFTERNOON.
20         IN SUMMARY, I BELIEVE, THERE'S A CONSENSUS THAT COUNT
21    1 WILL -- THE GOVERNMENT IS ESSENTIALLY WITHDRAWING IT AND HAS
22    INDICATED IT WILL EITHER SUPERSEDE OR FOLLOW IT, FILE A
23    SEPARATE INDICTMENT.
24         THE SECOND QUESTION IS COUNTS 6 AND 7.  WE BELIEVE
25    IT'S CLEAR THAT COUNT 7 IS INCLUDED WITHIN COUNT 6.  THEY BOTH
```

| | |
|---|---|
| 1 | DEAL WITH HUMAN GROWTH HORMONE 6S, A BROAD ALLEGATION THAT |

1  DEAL WITH HUMAN GROWTH HORMONE 6S, A BROAD ALLEGATION THAT
2  WOULD INCLUDE ANY USE OF HUMAN GROWTH HORMONE AND, THEREFORE,
3  INCLUDES 7, AND 7, THEREFORE, IF CONVICTED ON THAT WOULD
4  REPRESENT MULTIPLICITOUS CONVICTION ON COUNT RELATED TO THAT.
5           **THE COURT:** WHAT ABOUT 8 THEN?
6           **MR. RIORDAN:** YES, I WAS GOING TO GET TO THAT, YOUR
7  HONOR. 8 IS RATHER THAN BEING -- 8 IS MULTIPLICITOUS AND
8  DUPLICITOUS IN A SENSE THAT IT REFERS BOTH TO CHARGES.
9           THE QUESTION IS FRAMED BOTH IN TERMS OF TESTOSTERONE
10 AND HUMAN GROWTH HORMONE, WHICH WOULD MEAN THAT A JURY COULD
11 SPLIT SIX TO SIX ON TESTOSTERONE AS WELL AS HUMAN GROWTH
12 HORMONE.
13          BUT WE THINK THE SOLUTION, YOUR HONOR, AND THE HUMAN
14 GROWTH HORMONE PART WHILE DUPLICITOUS AS TO, INTERNALLY AS TO 8
15 IS MULTIPLICITOUS AS TO 6 AND 7.
16          IF THE COURT STRIKES THE PART -- PORTION OF THE
17 QUESTION DEALING WITH HUMAN GROWTH HORMONE, THAN IT IS NO
18 LONGER DUPLICITOUS AND THAT PORTION OF 8 IS NO LONGER
19 MULTIPLICITOUS AS TO 6 AND 7. SO THOSE THREE ARE RELATED 6, 7
20 AND 8, YOUR HONOR.
21          ON COUNT 2 MR. BONDS -- THE ONLY PORTION OF THE
22 COLLOQUY CITED IN COUNT 2 THAT IS CITED AS A FALSE ANSWER IS
23 THE QUESTION REGARDING WHETHER HE TOOK ANYTHING LIKE THAT.
24          WE JUST THINK THAT IS FAR TOO VAGUE TO PERMIT A JURY
25 TO MAKE AN INTELLIGENT DECISION ON WHETHER THERE WAS ANY

1 MEETING OF THE MINDS ON WHAT IS BEING DISCUSSED AND CERTAINLY
2 TOO VAGUE FOR THE DEFENSE TO KNOW WHAT PROOF WOULD BE OFFERED
3 IN SUPPORT OF COUNT 2.
4     I SHOULD POINT OUT, THAT VIRTUALLY EVERYTHING IN THE
5 COUNTS THAT -- WERE THE COURT TO GRANT EACH REQUEST THAT WE
6 MAKE IN TERMS OF VAGUENESS, MULTIPLICITY AND DUPLICITY, THE
7 GOVERNMENT WOULD BE LEFT WITH ESSENTIALLY FIVE OR SIX COUNTS
8 THAT COVER ALL THE SAME GROUND AS THE COUNT THAT WE'RE
9 CHALLENGING.
10     IN COUNT 5, AGAIN, THIS IS FRAMED IN TERMS OF DID YOU
11 RECEIVE ANYTHING FROM ANDERSON OR ANY ASSOCIATE. WE THINK THAT
12 THE PROBLEMS WITH THE COUNT CAN BE -- COULD BE CURED BY
13 STRIKING THE LANGUAGE AS TO ASSOCIATES, WHICH THE GOVERNMENT IN
14 ITS RESPONSE BASICALLY SAYS IS SURPLUSAGE IN ANY CASE.
15     AND WE'RE THEN LEFT WITH ONE, TWO, THREE, FOUR
16 ADDITIONAL COUNTS THAT WE SIMPLY THINK ARE -- THE QUESTIONS AND
17 ANSWERS ARE FAR TOO CONFUSING OR VAGUE TO SUPPORT A VALID
18 CONVICTION. AND I'M PREPARED TO RESPOND TO ANY QUESTIONS ON
19 ANY OF THOSE FOUR.
20     YOUR HONOR, YOU KNOW, WE HAVE A SITUATION, FOR
21 INSTANCE, IN 14 WHERE GOVERNMENT HAS UNDERLINED AS A FALSE
22 ANSWER BOTH THE RESPONSE WHETHER MR. BONDS WAS RECEIVING
23 SUBSTANCES IN PARTICULAR TIME AND HIS RESPONSE THAT HE COULD BE
24 WRONG ABOUT HIS ASSERTION, I REALLY DON'T THINK -- THAT COUNT
25 IS SIMPLY INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A

1  CONVICTION, GIVEN THE QUALIFICATION ON THE CENTRAL ALLEGATION.

2  WE HAVE A QUESTION IN 12 WHERE MR. BONDS ACCORDING TO
3  THE GOVERNMENT GIVES AN ANSWER THAT, NO, HE WASN'T TAKING
4  SOMETHING IN 2001, HE THOUGHT IT WAS IN THE END OF 2000, HE
5  THOUGHT THAT IT WAS AT THE END OF THE WORLD SERIES AND HIS
6  FATHER WAS GOING THROUGH CANCER.

7  THE GOVERNMENT ASSERTS THAT THOSE ARE PERIODS OF 2000,
8  2002 AND 2003. AGAIN, THIS IS AN AREA THAT'S BEEN COVERED BY
9  OTHER QUESTIONS AND THE FAILURE OF THE GOVERNMENT TO FOLLOW UP
10  WITH PRECISE QUESTIONS THAT DEAL WITH RESISTANCE AS BRONSON
11  REQUIRES, SIMPLY MAKE THESE COUNTS IMPOSSIBLE TO GET A -- TO
12  FRAME AS A QUESTION OF GUILT OR INNOCENCE BEFORE THE JURY.

13  SO WE HAVE CHALLENGED -- AND THAN ULTIMATELY WE HAVE
14  THE QUESTION OF COUNT 15, WHICH IS GOING TO BE CONTINGENT ON
15  THE COURT'S RESPONSE TO THE OTHER CHALLENGES, DEPENDING ON
16  WHETHER THOSE ARE GRANTED, WE HAVE A SITUATION IN COUNT 15
17  WHERE IF MULTITUDE OF COUNTS ARE STRICKEN, WE HAVE THE
18  GOVERNMENT ALLEGING ALL OF THE PRIOR COUNTS AS A BASIS FOR THE
19  OBSTRUCTION OF JUSTICE COUNT.

20  WE THINK THAT RAISES DUPLICITY PROBLEMS. CERTAINLY
21  DOES RAISES PROBLEMS IF THAT COUNT WOULD REST ON ALL OF THESE
22  ALLEGATIONS, WERE TO REST ON ALLEGATIONS THAT THE COURT STRIKES
23  FOR ANY OF THE NUMBER OF REASONS THAT WE WOULD ADVANCE, YOUR
24  HONOR.

25  **THE COURT:** LET ME ASK YOU THIS QUESTION. ON 8, WHICH

1  INCLUDES THE QUESTION YOU WEREN'T GETTING ANY TESTOSTERONE OR
2  GROWTH HORMONE DURING THAT PERIOD OF TIME, WHICH IS AS YOU
3  SUGGEST BOTH MULTIPLICITOUS AND DUPLICITOUS, THE FIX IS STRIKE
4  GROWTH HORMONE BECAUSE IT'S ALREADY IN 6, RIGHT?
5          **MR. RIORDAN:** THAT'S RIGHT.
6          **THE COURT:** WHAT ABOUT TESTOSTERONE WHICH IS BACK IN
7  NUMBER THREE?
8          **MR. RIORDAN:** WELL, YOUR HONOR, I'M NOT GOING TO ARGUE
9  AGAINST THE COURT'S POSITION.
10         **THE COURT:** MAYBE IT'S A DIFFERENT TIME FRAME.  I WANT
11 TO HAVE AN END TO THE NUMBER OF MOTIONS WE HAVE ON THIS EXACT
12 POINT.
13         **MR. RIORDAN:** RIGHT.  THREE DOES INCLUDE ALLEGATION AS
14 TO A SPECIFIC PERIOD OF TIME AND IT IS A PERIOD OF TIME THAT
15 DIFFERS, IF ONE READS THE LATER STATEMENT IN CONJUNCTION WITH
16 THE EARLIER STATEMENT IN THREE IT COULD REFER TO JANUARY
17 DECEMBER OF 2001 WHILE 8 REFERS TO JANUARY OF 2002.
18         YOU KNOW WHY WE'RE SLICING, I WAS ABOUT TO SAY SLICING
19 THE BABY, I'LL SLICE SOMETHING ELSE IN TERMS OF THAT, I MEAN,
20 THE GOVERNMENT COULD DEFEND IT ON THE GROUND THOSE ARE TWO
21 DIFFERENT TIME PERIODS.
22         **THE COURT:** YOU'RE NOT PLANNING TO MAKE ANOTHER MOTION
23 ON THAT, ARE YOU?
24         **MR. RIORDAN:** WELL, WE HAVEN'T MADE THAT MOTION, YOUR
25 HONOR.

1  **THE COURT:** I KNOW. ACTUALLY, I'M NOT -- I'M KIND OF
2  TEASING ABOUT THAT, BUT I'M TRYING TO UNDERSTAND THE SORT OF
3  LOGICAL PRINCIPLE THAT'S BEING USED HERE AND I WONDERED ABOUT
4  THAT ONE AS WELL.
5  **MR. RIORDAN:** I HAD TO GO BACK TO THAT, YOUR HONOR,
6  AND I FAIRLY THINK THE REASON WE DIDN'T CHALLENGE IT AS BEING
7  MULTIPLICITOUS WAS THAT THE GOVERNMENT READS IT AS BEING TWO
8  DIFFERENT TIME PERIODS AND --
9  **THE COURT:** BUT THEY'RE AWFULLY CLOSE IN TIME?
10 **MR. RIORDAN:** I BELIEVE, I BELIEVE THE GOVERNMENT MAY
11 TAKE THE POSITION IT HAS DIFFERENT DOCUMENTS IN THAT PERIOD OF
12 TIME.
13 **THE COURT:** ALL RIGHT. THANK YOU.
14 **MR. RIORDAN:** THANK YOU.
15 **THE COURT:** MR. WILSON.
16 **MR. WILSON:** GOOD AFTERNOON, YOUR HONOR.
17 STARTING WITH MULTIPLICITY ON COUNTS 6 AND 7, WE READ
18 THE COURT'S ORDER ON THE PRIOR DUPLICITOUS MOTION TO REQUIRE US
19 TO SPECIFY ONE ALLEGATION OF PERJURY OR FALSE STATEMENT PER
20 COUNT.
21 THE FIRST TWO SENTENCES OF THE COURT'S ORDER BASICALLY
22 SAY ELECT ONE SPECIFICATION PER COUNT OR SUPERSEDE, AND WE TOOK
23 THAT TO MEAN THAT IF WE SUPERSEDE WE COULD ONLY HAVE ONE
24 SPECIFICATION PER COUNT. THEREFORE, WE THINK WE FOLLOW THE
25 COURT'S ORDER IN DRAFTING THE INDICTMENT THE WAY WE HAVE.

1    GOING BEYOND THAT, I THINK, FOR THE REASONS SET FORTH
2 IN OUR PLEADINGS, COUNT 6 AND 7 ARE NOT MULTIPLICITOUS.  I
3 THINK, THE MOST FUNDAMENTAL REASON IS THAT THE QUESTIONING FOR
4 EACH COUNT WAS TRYING TO GET AT SOMETHING DIFFERENT.
5    BOTH COUNTS -- EACH COUNT REVOLVED AROUND QUESTIONING
6 ABOUT DIFFERENT DOCUMENTS AND THE DEFENDANTS -- THE QUESTIONS
7 MAY HAVE BEEN VERY SIMILAR IN ASKING ABOUT THE SAME STEROID,
8 AND THE DEFENDANT'S ANSWERS OBVIOUSLY WERE CONSISTENT, BUT THE
9 QUESTIONING WAS MEANT TO FURTHER THE GRAND JURY INVESTIGATION
10 OF TWO SEPARATE DOCUMENTS AND THAT, IN OUR VIEW, SUFFICIENT TO
11 KEEP THEM FROM BEING MULTIPLICITOUS.
12    **THE COURT:** DO YOU HAVE ANY CASES THAT SAY THAT WHERE
13 IT'S ALL ONE GRAND JURY HEARING?
14    **MR. WILSON:** NO, YOUR HONOR.  THE CASES ARE THE ONES
15 WE CITED WHICH ARE THE FALSE STATEMENT CASES, BUT WE THINK THEY
16 SET OUT --
17    **THE COURT:** I UNDERSTAND IT MUCH BETTER CONCEPTUALLY,
18 TWO DIFFERENT FOLKS OR TWO DIFFERENT AGENCIES AND THEY'RE OFF
19 DOING TWO DIFFERENT THINGS, HERE IT'S JUST ONE GRAND JURY
20 PROCEEDING.
21    **MR. WILSON:** ONE GRAND JURY PROCEEDING, BUT TWO
22 SEPARATE SETS OF QUESTIONS ABOUT TWO DIFFERENT DOCUMENTS.
23    **THE COURT:** THAN LOGICALLY YOU COULD HAVE 10 DOCUMENTS
24 THAT HAVE THE SAME THING IN IT AND YOU COULD ASK HIM THE SAME
25 QUESTION 10 TIMES AND CHARGE HIM WITH 10 COUNTS OF PERJURY ON

1 THE SAME ANSWER.

2 **MR. WILSON:** I THINK, IF THEY WERE QUESTIONS ABOUT, IF
3 THE GRAND JURY TRYING TO ASCERTAIN THE MEANING OF A DOCUMENT
4 AND THE WITNESS IS BEING ASKED ABOUT THAT PARTICULAR DOCUMENT,
5 EACH ANSWER WOULD SUPPORT A SEPARATE COUNT OF PERJURY.

6 BUT AS I SAID, YOUR HONOR, WE TRIED TO FOLLOW THE
7 ORDER. IF THE COURT BELIEVES THAT THESE STATEMENTS SHOULD BE
8 IN THE SAME COUNT, WE'LL PUT THEM IN THE SAME COUNT.

9 **THE COURT:** MY MEMORY IS, I DON'T HAVE IT BEFORE ME,
10 THERE WERE LIKE FOUR SUBPARTS IN ONE OF THESE COUNTS.

11 **MR. WILSON:** YES. YES. COUNT 3 IN THE FIRST
12 INDICTMENT ALLEGES FOUR INSTANCES IN WHICH THE DEFENDANT DENIED
13 HE RECEIVED HUMAN GROWTH HORMONE.

14 **THE COURT:** THIS IS THE TWO IN THE MIDDLE THAT WAS --

15 **MR. WILSON:** THIS IS C, THREE C. WE READ THE
16 DEFENDANT'S MOTION TO CLAIM ALL FOUR OF THEM WERE DUPLICITOUS.

17 IN ADDITION, WE HAD YOUR ORDER WHICH REQUIRES THEM TO
18 TAKE THEM OUT. AS OUR PAPERS CONCEDE WE HAVE A TYPOGRAPHICAL
19 PROBLEM IN THE FIRST COUNT, WE'RE GOING TO SUPERSEDE --

20 **THE COURT:** ANYWAY, RIGHT?

21 **MR. WILSON:** WE'RE GOING TO SUPERSEDE. IF THE COURT
22 TELLS US THOSE TWO COUNTS CAN BE PART OF THE SAME COUNT WE'LL
23 PUT THEM BACK TOGETHER AGAIN, BUT FOR THE REASONS THAT I'VE
24 JUST EXPLAINED WE THINK THEY'RE NOT MULTIPLICITOUS.

25 ON THE QUESTION OF AMBIGUITY, MR. RIORDAN'S SUGGESTION

|     |                                                              |
| --- | ------------------------------------------------------------ |
| 1   | TODAY THAT THE COURT CAN STRIKE LANGUAGE IS NOVEL AND I DON'T |
| 2   | BELIEVE IT'S SUPPORTED BY ANY CASE LAW.                       |

```
 1   TODAY THAT THE COURT CAN STRIKE LANGUAGE IS NOVEL AND I DON'T
 2   BELIEVE IT'S SUPPORTED BY ANY CASE LAW.
 3           THE COURT:  I WAS GOING TO ASK YOU THAT.  CAN I DO
 4   THAT?
 5           MR. WILSON:  I DON'T BELIEVE SO.  THESE ARE THE
 6   QUESTIONS THE PROSECUTOR ASKED IN THE GRAND JURY, THOSE ARE THE
 7   QUESTIONS MR. BONDS RESPONDED TO, THOSE ARE THE QUESTIONS THAT
 8   THE TRIAL JURY HAS TO DECIDE BASED ON THOSE QUESTIONS WHETHER
 9   MR. BONDS GAVE FALSE STATEMENTS.
10           AND THAT, I THINK, IS THE FUNDAMENTAL POINT HERE.
11   THIS IS REALLY A JURY QUESTION.  THE AMBIGUITY OF THE ALLEGED,
12   AMBIGUITY OF THE QUESTIONS IS SOMETHING THAT MR. BONDS CAN
13   ARGUE TO THE JURY.  HE CAN SAY THEY'RE SO AMBIGUOUS MR. BONDS
14   COULD NOT HAVE UNDERSTOOD THEM, THAT HIS ANSWERS ARE,
15   THEREFORE, NOT FALSE.
16           BUT THE CASE LAW MAKES PRETTY CLEAR THIS IS BASICALLY
17   A JURY QUESTION, UNLESS IT'S SO FUNDAMENTALLY AMBIGUOUS THAT NO
18   ONE COULD MAKE SENSE OF THEM, THEN IT'S NOT MATTER TO BE
19   RESOLVED AT THIS STAGE OF THE PROCEEDINGS.
20           SO OUR SUBMISSION WOULD BE THAT THIS SHOULD GO FORWARD
21   TO THE JURY.  IF THE EVIDENCE AT TRIAL CONVINCES THE COURT THIS
22   QUESTION NEEDS TO BE REVISITED, IT CAN DO SO AFTER THE JURY HAS
23   RENDERED A VERDICT.
24           AT THIS POINT WE THINK IT'S PREMATURE TO FIND THAT ANY
25   OF THE QUESTIONS ARE SO FUNDAMENTALLY AMBIGUOUS THAT THEY
```

1  SIMPLY CAN'T BE SUBMITTED TO THE JURY AT TRIAL.
2         ON QUESTIONS -- ON COUNTS 13 AND 14, I'D LIKE TO POINT
3  OUT DEFENDANTS CLAIM THERE IS REALLY NOT -- THE QUESTIONS ARE
4  AMBIGUOUS, THE ANSWERS ARE AMBIGUOUS. THAT'S NOT A GROUND FOR
5  DISMISSAL AT ALL, THAT'S JUST SIMPLY A JURY ARGUMENT.
6         AGAIN, DEFENDANTS FREE TO MAKE THAT ARGUMENT TO THE
7  JURY THAT HIS ANSWERS ARE SO AMBIGUOUS THEY'RE NOT FALSE, BUT
8  THE ERRORS OR THE ALLEGATIONS HE'S MAKING ABOUT THOSE COUNTS
9  ARE -- REALLY GO TO THE ANSWERS AND NOT TO THE QUESTIONS AND WE
10 THINK THAT HE HASN'T REALLY IDENTIFIED ANY AMBIGUITY IN THOSE
11 COUNTS.
12        FINALLY ON COUNT 15 I, AGAIN, I THINK, MR. RIORDAN IS,
13 PERHAPS, IS MISCHARACTERIZING THE NATURE OF THAT COUNT. IT
14 DOESN'T REALLY MATTER IF OTHER COUNTS ARE DUPLICITOUS, IT
15 DOESN'T MATTER HOW THE OTHER STATEMENTS ARE ARRANGED, THE POINT
16 IS BY REPEATING THE SAME LIES OVER AND OVER AGAIN AND MAKING
17 THE SAME FALSE STATEMENTS OVER AND OVER AGAIN AND BY ENGAGING
18 IN THE EVASION OF THE PROSECUTOR'S QUESTIONS MR. BONDS IS
19 ALLEGED TO HAVE OBSTRUCTED JUSTICE AND THAT'S THE COUNT -- IT'S
20 NOT A COUNT THAT'S REALLY RISES OR FALLS ON THE MULTIPLICITY OR
21 DUPLICITY OF THE OTHER COUNTS.
22        I'D BE HAPPY TO ANSWER ANY QUESTIONS THE COURT HAS.
23 WE SUBMIT ON OUR PAPERS.
24        **THE COURT:** ALL RIGHT. THANK YOU.
25        DID YOU HAVE ANYTHING FURTHER, MR. RIORDAN?

1  **MR. RIORDAN:** I GATHER, THE ONE QUESTION THE COURT'S
2  MIND WAS WHETHER IT COULD RESORT TO STRIKING LANGUAGE IN ORDER
3  TO AVOID ISSUES.
4      ONE OF THE QUESTIONS WERE, WELL, NUMBER ONE, WE WOULD
5  SUBMIT IF THE COURT'S CONCLUSION WERE THAT IT COULDN'T CURE A
6  DEFECT BY STRIKING LANGUAGE, THAN IT WOULD BE REQUIRED AS THE
7  CASE COUNT 8 TO DISMISS THE COUNT.
8  **THE COURT:** DO YOU THINK I CAN STRIKE THINGS?
9  **MR. RIORDAN:** WELL, THE GOVERNMENT HAS TAKEN THE
10  POSITION, FOR INSTANCE, AS TO THE ASSOCIATE LANGUAGE, THAT THAT
11  REALLY WASN'T THE QUESTION, THAT THE QUESTION IS CLEAR THAT IT
12  REFERS TO MR. ANDERSON.
13      IF THAT'S THE CASE THAN IT'S ARGUING THAT, IT'S
14  AGREEING THAT THE REMAINING LANGUAGE IS SURPLUSAGE. I THINK,
15  YOU CAN STRIKE SURPLUSAGE.
16      WHEN WE GET TO THE QUESTION OF COUNT 8, OBVIOUSLY, THE
17  GOVERNMENT FREQUENTLY HAD ANSWERS. JUST LOOKING DOWN AT COUNT
18  2, FOR INSTANCE, WHERE AT LINE 15 HAS THE RELEVANT ANSWER THAT
19  IT'S INDICTING MR. BONDS ON AND IT CONTAINS SEVERAL STATEMENTS
20  AND IT UNDERLINES ONE RATHER THAN SEVERAL OF THEM.
21      IT FELT NO COMPULSION TO UNDERLINE ALL THE ANSWER, IT
22  DOES THAT IN ANY NUMBER OF OTHER INSTANCES HERE. OBVIOUSLY, TO
23  THE QUESTION OF DID YOU TAKE TESTOSTERONE IT COULD HAVE
24  UNDERLINED THAT PORTION OF THE ANSWER ON 8 AND NOT UNDERLINED
25  THE HUMAN GROWTH HORMONE AND THERE WOULDN'T HAVE BEEN A

1 MULTIPLICITY PROBLEM.

2 **THE COURT:** I DON'T KNOW IF YOU'RE RIGHT, WHAT THEY'VE
3 UNDERLINED IS HIS STATEMENTS, NOT THEIR QUESTIONS. YOU
4 COULDN'T FIX IT BY UNDERLINING SOME PART OF THE QUESTION AND
5 LEAVING THE OTHER PART OF THE QUESTION UNDERLINED, THAT
6 WOULDN'T HELP IN TERMS OF THE ANSWER.

7 **MR. RIORDAN:** I UNDERSTAND. WELL, I THINK, IF THE
8 COURT HAS ANY RESERVATIONS ABOUT THAT, THAN THE SOLUTION TO IT
9 IS TO DISMISS COUNT 8 BECAUSE IN ITS PRESENT FORM I DON'T THINK
10 THERE'S ANY QUESTION THAT IT IS BOTH DUPLICITOUS AND
11 MULTIPLICITOUS, YOUR HONOR.

12 I PROBABLY SHOULDN'T BE TRYING TO HELP THE GOVERNMENT
13 OUT IN TERMS OF SAVING THE COUNT. I THINK -- I THINK, LACKING
14 AUTHORITY THE SOLUTION TO COUNT 8 IS SIMPLY TO DISMISS.

15 THANK YOU.

16 **THE COURT:** ANYTHING FURTHER?

17 **MR. WILSON:** CAN I RESPOND BRIEFLY?

18 **THE COURT:** SURE.

19 **MR. WILSON:** ON THE COUNT INVOLVING MR. ANDERSON OR
20 HIS ASSOCIATES, OUR POSITION NOT THAT OR HIS ASSOCIATES IS
21 UNNECESSARY OR THAT IT CAN BE STRUCK, OUR POSITION IS IT'S LIKE
22 ASKING SOMEONE IS IT RAINING OR SNOWING OUTSIDE, IF THEY SAY
23 NO, THEY MEAN IT'S NEITHER RAINING OR SNOWING. BY DENYING
24 EITHER ANDERSON OR HIS ASSOCIATES HAD INJECTED HIM HE'S DENYING
25 THEY BOTH HAD, IN PARTICULAR ANDERSON HAD.

1  SO WE'RE NOT SAYING IT'S SUPERFLUOUS OR EXTRANEOUS,
2  HIS ANSWER COVERS ANDERSON, THAT'S THE QUESTION.  IT'S NOT A
3  COMPOUND QUESTION IN THE SENSE OF DO YOU WANT SOUP OR SALAD,
4  IT'S A COMPOUND QUESTION DID YOU HAVE SOUP OR SALAD FOR LUNCH.
5  IF YOU SAY, NO, YOU DIDN'T HAVE NEITHER, THAT'S WHY
6  IT'S NOT AMBIGUOUS BECAUSE IT -- A NO ANSWER CLEARLY DENIES
7  BOTH.
8  THANK YOU.
9  **THE COURT:** ALL RIGHT.  THANK YOU.  WELL, THE MATTER
10 WILL BE SUBMITTED.  I SHALL PROVIDE A RESPONSE TO YOUR
11 QUESTIONS PRESENTLY.
12 DO WE NEED TO TALK ABOUT ANYTHING ELSE TODAY?
13 **MR. RUBY:** PROBABLY NOT.  IT'S BEEN A LONG DAY, I'M
14 SURE FOR THIS COURT, BUT DO HAVE TO TALK ABOUT OUR CASE
15 MANAGEMENT ISSUE.
16 **THE COURT:** SURE.
17 **MR. RUBY:** WE BEEN TALKING ABOUT THE IDEA OF WHEN TO
18 HAVE HEARINGS, IF HEARING ARE GOING TO BE HAD ON FOUNDATIONAL
19 ISSUES.  THERE'S EVIDENCE WE GOTTEN IN DISCOVERY WHICH WE THINK
20 CAN'T COME INTO EVIDENCE BECAUSE THERE'S NO FOUNDATION FOR IT.
21 AND WE WOULD LIKE TO EXPLORE THE IDEA OF NOT HAVING
22 THAT ALL HASHED OUT AT THE TIME WHEN THE JURY IS WAITING AND
23 WE'RE IN TRIAL.
24 SO SORT OF TO GET TO THE POINT, I HOPE TO CONTINUE TO
25 TALK TO THE GOVERNMENT ABOUT WHETHER WE CAN PRESENT A PROPOSED

1  STIPULATION TO YOUR HONOR THAT, AT LEAST, AGREE TO SUBMIT TO
2  THE -- AS TO HOW TO DEAL WITH THIS TO STREAMLINE, TRULY TO
3  STREAMLINE THINGS AND TO AVOID THE CRUNCH THAT COMES AT TRIAL
4  WHEN A LOT OF VERY IMPORTANT LEGAL ISSUES AND EVIDENTIARY
5  QUESTIONS COME UP AND NEED TO BE RESOLVED IN THE TIME OF A JURY
6  RECESS.
7       AND IF WE CAN'T AGREE WE'LL KNOW THAT PRETTY QUICKLY,
8  AND I WOULD PROPOSE THAT BY THE 21ST OF NOVEMBER THE PARTIES,
9  IF WE CAN'T AGREE SEPARATELY, SUBMIT THEIR SUGGESTIONS, IF THEY
10 HAVE ANY, TO YOUR HONOR AS TO HOW THERE MIGHT BE A PHASING OR
11 SCHEDULING OR AN ORDER OF TAKING UP WHAT I'M CALLING
12 FOUNDATIONAL MATTERS.  COULD I JUST BE SPECIFIC?
13      FOR EXAMPLE, SUPPOSE THERE'S A CHEMICAL TEST, I THINK,
14 THERE IS A CHEMICAL TEST THE GOVERNMENT WANTS TO PUT INTO
15 EVIDENCE, I THINK, THEY WOULD LIKE TO GET IT INTO EVIDENCE, WE
16 THINK THAT THEY CAN'T POSSIBLY ESTABLISH A FOUNDATION ON
17 SEVERAL ESSENTIAL -- ACCESS A SCIENTIFIC FOUNDATION FOR THE
18 RELEVANCE OF THE TEST ON DAUBERT OR DAUBER GROUNDS, A CHAIN OF
19 CUSTODY, THAT SORT OF THING.  AND SEEMS TO US IT WOULD MAKE
20 SENSE AT SOME TIME BEFORE A JURY IMPANELED TO TAKE THAT UP AND
21 DEAL WITH THAT.  THAT'S JUST AN EXAMPLE OF THE SORT OF THING
22 WE'RE TALKING ABOUT.
23      **THE COURT:** MR. PARRELLA.
24      **MR. PARRELLA:** WELL, WE'RE PERFECTLY HAPPY TO CONTINUE
25 TALKING ABOUT THESE THINGS AND I'D LIKE TO RESOLVE THEM

1  PRETRIAL AS WELL.  I'M NOT QUITE SURE WHAT MR. RUBY IS
2  REFERRING TO IN HIS SUBMISSION, SOME SORT OF A BRIEFING
3  SCHEDULE OR SOMETHING MORE TO IT.
4      **THE COURT:** SOUNDED LIKE PRESENTATION SCHEDULE.
5      **MR. RUBY:** SO, FOR EXAMPLE, DIDN'T MEAN TO INTERRUPT
6  YOU, IF WE CAN'T AGREE WE MIGHT SUGGEST, WE'LL SAY, IN JANUARY
7  GOVERNMENT WOULD DO THIS AND WE COULD DO THAT AND YOUR HONOR
8  WOULD FIX A DATE TO HEAR US IF THE COURT WAS SO INCLINED AND
9  MAKE A DECISION ON SOME OF THESE THINGS.
10     I CAN TELL YOU ONE OF OUR PROPOSALS IF WE CAN'T REACH
11 AN AGREEMENT WOULD EMBRACE OFFERS OF PROOF THAT WOULD APPLY TO
12 BOTH SIDES.
13     FOR EXAMPLE, IF THE GOVERNMENT WANTED TO OFFER A TEST
14 OR IF WE IDENTIFIED A TEST AND WE THOUGHT THERE WAS NO
15 FOUNDATION, THE GOVERNMENT WOULD HAVE AN OPPORTUNITY TO MAKE AN
16 OFFER OF PROOF, HERE'S HOW WE'RE GOING TO LAY THE FOUNDATION.
17     WE HAVE -- WOULD HAVE AN OPPORTUNITY TO SAY, NO, THAT
18 DOESN'T WORK, YOU CAN'T GET THERE FROM HERE FOR THESE REASONS,
19 AND I THINK WE GET THROUGH A LOT OF THE LEGAL FOUNDATION FOR
20 THINGS PRETTY QUICKLY.
21     **MR. PARRELLA:** WELL, I THINK, IF WHAT'S BEING
22 SUGGESTED WE TRY THE CASE BEFORE WE TRY THE CASE.  I'M NOT
23 QUITE SURE THE GOVERNMENT IS ON BOARD WITH THAT.
24     DEFENSE HAS SOME ISSUES WITH SOME OF THE EVIDENCE THAT
25 WE'VE TURNED OVER, MY UNDERSTANDING WHICH, I GUESS, I WAS A

LITTLE PREMATURE, IS HE WAS SUGGESTING SOME SORT OF BRIEFING SCHEDULE, THAT'S WHAT WE WOULD SUGGEST.

IF THE DEFENSE HAS A DAUBERT MOTION, SHOULD MAKE THE DAUBERT MOTION, WE'LL RESPOND TO IT. I JUST DON'T THINK IT'S TYPICAL OR NECESSARY THAT THE GOVERNMENT BE REQUIRED TO COME IN AND MAKE OFFERS FOR PROOF FOR ITS CASE AND THEN WE SORT OF TRY THOSE ISSUES AND MOVE ON.

THE DEFENSE HAS OUR VAST AMOUNT OF -- VAST MAJORITY OF OUR DISCOVERY, I BELIEVE, SEEMS TO BE ANYWAY, THAT THEY KNOW WHAT THEY WANT TO MAKE THEIR MOTIONS ON AND WE SHOULD AGREE ON A MOTION SCHEDULE AND MOVE AHEAD.

**THE COURT:** WELL, YOU MAY BE TALKING ABOUT SIMILAR THINGS.

**MR. PARRELLA:** OKAY.

**THE COURT:** COMING AT IT FROM DIFFERENT POINTS OF VIEW. I DO AGREE IF THERE ARE THORNY QUESTIONS THAT WE CAN RESOLVE BEFORE THE JURY IN THE BOX THAT WOULD BE BETTER BECAUSE IT GIVES US MORE TIME TO THINK THROUGH.

IF YOU WANT TO PROPOSE A SCHEDULE, THAT WOULD BE FINE, JUST OR COMPETING SCHEDULES THAT WOULD BE FINE, I'M HERE.

**MR. PARRELLA:** WE COULD DISCUSS THIS OFF --

**MR. RUBY:** SURE. JUST SO WE HAVE A DATE, HAVE IN MIND IS THE --

**THE COURT:** HOW ABOUT NOVEMBER 21?

**MR. RUBY:** NOVEMBER 21.

1    **MR. PARRELLA:** THAT WOULD BE A DATE FOR US EITHER
2    JOINTLY OR SEPARATELY TO GET BACK TO THE COURT?
3        **THE COURT:** WITH A PROPOSAL.
4        **MR. PARRELLA:** NOT AN APPEARANCE DATE?
5        **THE COURT:** CORRECT. IF YOU WANT TO START SETTING
6    THINGS, WE'RE SET TO GO FIRST PART OF MARCH, SO IF YOU WANT TO
7    SET THINGS YOU NEED TO SET THEM IN JANUARY OR FEBRUARY.
8        **MR. RUBY:** OKAY.
9        **THE COURT:** THANK YOU.
10       **MR. WILSON:** THANK YOU.

12               (PROCEEDINGS ADJOURNED.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED, HEREBY CERTIFY THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.

IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 18TH DAY OF MARCH, 2009.

/S/ JAMES YEOMANS

_____

JAMES YEOMANS, CSR, RPR