Pages 1 - 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | NO. CR 07-0732-SI |
| ) | |
| BARRY LAMAR BONDS, ) | |
| ) | San Francisco, California |
| Defendant. ) | Tuesday |
| ) | February 17, 2009 |
| _____ ) | 3:38 p.m. |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          Joseph P. Russoniello
                           United States Attorney
                           450 Golden Gate Avenue, Box 36055
                           San Francisco, CA  94102
                           (415) 436-7232
                           (415) 436-7234 (fax)
                 **BY:  MATTHEW A. PARRELLA**
                      **JEFFREY R. FINIGAN**
                      **JEFFREY DAVID NEDROW**

**For Defendant:**          Law Offices of Allen Ruby
                           125 South Market Street, Suite 1001
                           San Jose, CA  95113
                           (408) 998-8500
                 **BY:  ALLEN RUBY**


(Appearances continued on next page)


**Reported By:**     **Lydia Zinn, CSR #9223, RPR**
                   **Official Reporter - U.S. District Court**

```
 1   APPEARANCES (CONT'D)
     Also for Defendant:      Arguedas, Cassman & Headley
 2                            803 Hearst Avenue
                              Berkeley, California  94710
 3                            (510) 845-3000
                              (510) 845-3003(fax)
 4                    BY:  CRISTINA C. ARGUEDAS
                           TED W. CASSMAN
 5

 6   Also for Defendant:      Riordan & Horgan
                              523 Ocatvia Street
 7                            San Francisco, CA  94102
                              (415) 431-3472
 8                            (415) 552-2703 (fax)
                      BY:  DENNIS PATRICK RIORDAN
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          **THE CLERK:**  Calling Criminal 07-732, United States

2    versus Barry Bonds.

3               Counsel, please state your appearance for the record.

4          **MR. PARRELLA:**  For the Government, Matt Parrella,

5    Jeff Nedrow, and Jeff Finigan.  Good afternoon, your Honor.

6          **MR. RUBY:**  Good afternoon, your Honor.  Allen Ruby,

7    for Mr. Bonds.  Mr. Bonds is present.

8          **MS. ARGUEDAS:**  Good afternoon.  Cris Arguedas, also

9    appearing for Mr. Bonds.

10         **MR. CASSMAN:**  Ted Cassman, also for Mr. Bonds.

11         **MR. RIORDAN:**  And Dennis Riordan, your Honor.

12         **THE COURT:**  Good afternoon.

13         **THE COURT:**  Okay.  This is our final pretrial

14   scheduling conference.  And I have a list of matters on my

15   agenda that I'd like to go through.  And then if there are

16   other things you'd like to raise, you may do so.

17              We are set to begin on March 2nd.  And I think that

18   the suggestion that you jointly made at our last hearing -- it

19   was a good one, which is that the questionnaires be provided to

20   the jury panel the morning of March 2nd; that the completed

21   questionnaires, then, could be collected by counsel and

22   reviewed; and then we would begin the actual *voir dire* process

23   Tuesday morning.  So I think that makes sense, and that's how

24   we would do it.

25              Now, you'll need to speak with David Weir, who is the

1  jury commissioner, about the mechanics of the questionnaires,

2  because the panel -- they're lengthy.  And you've said they can

3  only write on one side.  So we're talking about a lot of pieces

4  of paper.  And Mr. Weir may have ideas about how he obtains the

5  questionnaires, like who has to photocopy them and give them to

6  whom.  And I think he would like the answer to be somebody

7  gives them to him for the jury to fill out.

8        And then, once they're filled out, a set will be

9  given to counsel jointly.  And you can monitor one another at

10  the machine, and make your copies, I think, and share them with

11  each other.  David's done more than -- making a lot of copies

12  is the bottom line.  So if you guys can work with him, figure

13  out how to make that easy for him to do.

14        **MR. RUBY:**  Sure.

15        **THE COURT:**  So you'll have all day Monday to look at

16  those things.

17        And then we'll come in Tuesday morning and do the

18  *voir dire*.  This is, as you probably know, different from what

19  I normally do anyway in the *voir dire* process.  So then the

20  oral *voir dire* becomes a little different than the normal case.

21  And it would be my plan to really truncate the oral questions,

22  because we will have had so much information on the

23  questionnaires.

24        I think it's still important for the Court to confirm

25  orally with everyone that the basic constitutional rights will

1  be recognized and followed, but in terms of all of the detail

2  in the questionnaires, I wouldn't anticipate myself going over

3  that with the jury panel at any length.

4       And also, we normally give counsel a very modest

5  amount of time to ask their own questions on *voir dire*.  And

6  because of the questionnaires and the size of the panel, it was

7  my thought that time might be a little lengthened in this

8  instance.  So I was contemplating giving each of you an hour

9  that you could use however you want.  It may not be necessary.

10 You may have so much information from the questionnaires that

11 you don't feel the need to do that, but in the event there are

12 follow-ups, it seems like that ought to be enough.  So that

13 would be my plan, is to give you each an hour.

14      I think -- I was talking with Mr. Weir last week.

15 And I think in terms of just the numbers that we may be

16 processing here, what we would do would be *voir dire* in the

17 first instance -- enough people to make up the entire panel

18 plus the alternates plus the total available peremptory

19 challenges, which -- I had the number the other day.  It's 32

20 or something like that.  Ask questions of all of them.  Allow

21 challenges for cause to be made as to that initial group.

22      Those for whom the challenges are granted would then

23 be excused.  And we would take in a new wave of however many we

24 needed to fill up that complement, and then ask questions

25 again.

1          Do you see what I'm saying?  It's different from how

2    I normally do it, but I think, given the numbers that we're

3    dealing with, it might be more sensible to do it this way.  I

4    think this is closer to what some of the other judges do

5    anyway.

6          So if there are questions about that, you can ask me

7    or ask Tracy about it.

8          **MR. FINIGAN:**  Jeff Finigan.  For the record, I don't

9    know if you said this before.  Are you going to be dark on

10   Fridays for this trial, like you typically are?

11         **THE COURT:**  Mm-hm.

12         **MR. FINIGAN:**  Okay.  Thank you.

13         **THE COURT:**  We'll be dark on Fridays.  Monday through

14   Thursday, 8:30 to 3:30.  We'll have a break in the morning, and

15   a break in the afternoon, and a modest break for lunch, roughly

16   at noon.  So that's my plan.

17         And deliberating juries are allowed to deliberate on

18   Fridays; we just don't take evidence on Fridays.

19         Yes.

20         **MR. RUBY:**  In respect to the questionnaires, if, as

21   sometimes happens, the questionnaires yield some dramatic cause

22   issue -- one of the jurors is kinsfolk of somebody who's going

23   to be a witness -- how do you want to handle that?  Or --

24         **THE COURT:**  It would seem to me that if there are

25   obvious things -- and I mean only obvious things -- we ought to

1 talk about that before we even get going, and let them go right

2 then.

3          **MR. RUBY:**  Yeah.

4          **THE COURT:**  I just don't want to have a lot of time

5 spent on things that aren't that obvious off of the papers, but

6 sure.  Things that are clear challenge for cause, we might as

7 well just do that before we even have people come in, rather

8 than make them wait.

9          **MR. PARRELLA:**  Along the same lines, your Honor, you

10 mentioned that you planned on truncating your own oral

11 questioning of the panel.  I would just suggest, from having

12 done these cases in here before, that if, in the questionnaire,

13 there's some issue that's raised that is better addressed by

14 the Court, that you still be open to our suggesting that

15 perhaps it would be better addressed by the Court than by

16 either side.

17          **THE COURT:**  Oh, I'll be happy to do that.  It's just

18 I would want you to let me know --

19          **MR. PARRELLA:**  Right.

20          **THE COURT:**  -- the areas that you're worried about,

21 because I may not be sensitive to them in the same way that you

22 are.

23          **MR. PARRELLA:**  We'll go through the questionnaires.

24          **THE COURT:**  Yeah.

25          **MR. PARRELLA:**  And we should know the 32 that we're

1  starting with -- is that correct? -- before we leave with the

2  questionnaires.  Is that --

3        THE COURT:  Well, that's a good question.  I think

4  the answer to that would be yes.  I think that they will be put

5  in, in order, at some point.  Normally that happens right when

6  they come in court, but I don't know any reason it couldn't

7  happen then.

8        MS. ARGUEDAS:  Along the same lines, some judges put

9  them all in order all the way, until the end.

10        THE COURT:  Yeah.  That's what I usually do.

11        MS. ARGUEDAS:  That's what we're talking about.

12        THE COURT:  That's what we're talking about.

13        MS. ARGUEDAS:  So that we know who the next person

14  coming in is.

15        THE COURT:  That would be the idea.  And I don't see

16  any reason why, at the time that you are given the

17  questionnaires, they couldn't themselves --

18        MS. ARGUEDAS:  Yes.

19        THE COURT:  -- be put in order then.

20        MR. PARRELLA:  With a number on it that we can --

21        THE COURT:  Right, right.  I'll check with David Weir

22  after our conference here today.  If there's some reason that

23  can't be done, I'll let you know; but that makes a lot of sense

24  to me.

25        You each have -- we've determined to have a jury of

1    12 members plus 2 alternates; so the Government has 6

2    challenges, the defendant has 10 challenges, and each side has

3    1 additional challenge for the alternates.

4            Now, the challenges for cause, as I've indicated --

5    some of them you may want to do in advance.  Some of them you

6    will do as we go through the 32 group flights of folks.

7    However, the peremptory challenges -- once we've got the 32

8    folks who have passed for cause, the peremptories would still

9    be done on paper.  So I'll give you a sheet of paper, and you

10   pass it back and forth for that.

11           **MS. ARGUEDAS:**  Your Honor, do you have a procedure

12   for a case like that, that has had so much publicity, so that,

13   if the follow-up questions either by the Court or by counsel

14   are eliciting information that is publicity based, do you have

15   some plan for how we're going to do that?  Are we going to do

16   that in some segregated way, so that everybody else isn't

17   hearing what is perhaps misinformation from a juror?

18           **THE COURT:**  That's a compound question.

19           **MS. ARGUEDAS:**  Yeah.

20           **THE COURT:**  The answer is no to a lot of the things

21   you said, which are like:  do I have a plan?

22           But it would be my thought generally when we hit

23   sensitive things of any stripe --

24           **MS. ARGUEDAS:**  Mm-hm.

25           **THE COURT:**  -- I'm happy to do it at side bar.  And I

1  usually tell the jurors in advance, "If there is an issue that

2  you feel you'd be more comfortable talking about in private,

3  you can come over to side bar.  You still have to tell me and

4  the lawyers about it, but it's less public than the open

5  court."

6          So we will allow that to happen.  And if you feel

7  like somebody's getting into the kind of publicity you're

8  anxious about, just let me know, and we'll do that.

9          On the other hand, I think that we will not find any

10 jurors who have not been exposed to a good deal of publicity.

11         **MS. ARGUEDAS:**  Right.

12         **THE COURT:**  So I'm a little less anxious about that.

13 As you say, if there's misinformation or something you're

14 concerned about, we can do that.

15         Mr. Riordan, were you scratching, or did you have a

16 comment?

17         **MR. RIORDAN:**  You caught me scratching, your Honor.

18         **THE COURT:**  So that's *voir dire*.

19         Anything else on that?

20         **MR. FINIGAN:**  Your Honor, Jeff Finigan, with another

21 question.

22         **THE COURT:**  Yeah.

23         **MR. FINIGAN:**  In the questionnaire that's been

24 submitted, your Honor, in the instructions section --

25         I don't know if you have a copy of that in front of

1  you.

2         **THE COURT:**  I do.  Hang on.  Yeah.

3         **MR. FINIGAN:**  The very last sentence of the first

4  paragraph of the instruction section reads that this

5  questionnaire will not be made public.

6         I just want to make sure that's a promise -- if we're

7  going to make it to the jurors -- that we can keep.  Obviously,

8  the rest of *voir dire* is going to be in the public record.  I

9  don't know if you're going to have requests for these

10  questionnaires or not.  I'm not asking that they be made

11  public.  I just don't want to make a promise to the potential

12  jurors that cannot be kept.

13         **THE COURT:**  Well, Mr. Finigan, I am not certain about

14  the answer to your question.  With respect to questionnaires

15  for jurors who were not selected, it is my understanding that

16  they will be destroyed, and that there's no public record

17  unless there's some issue or challenge for cause that's

18  disputed.  There might be some reason for that, I suppose; but

19  generally, we do not retain the questionnaires for the

20  individuals who are not selected for the jury.

21         With respect to those who are selected, I believe we

22  retain those questionnaires, because I can think of ways that

23  it might become relevant on appeal; but I don't know about

24  whether those are necessarily made public, because they do

25  contain -- some of them -- information that's really quite

1  personal.

2          **MR. FINIGAN:**  Right.

3          **THE COURT:**  So I don't know the answer to that

4  question.  So I'm glad you flagged that.  And we'll have to

5  figure out whether we can obviously say that.  As long as we're

6  on the questionnaire, there are disputes about that.

7          **MR. FINIGAN:**  Okay.

8          **THE COURT:**  First, let me say I am relieved and

9  gratified to see how much was agreed upon here.  This is the

10  most you folks have ever agreed upon; at least, in my memory.

11          And with respect to the things that were not agreed

12  upon, I'm willing -- I'm prepared to give you rulings.  I am

13  looking, now, at the defendant's proposed additions.  You gave

14  me a separate document that had proposed additions on it.

15          I am prepared to add the question that you've listed

16  as Question 1, concerning substance abuse.  I am not prepared

17  to add the questions that you've listed as 2, 3, 4, 5, -- 2, 3,

18  4, or 5.  I am prepared to add 6.  I am not prepared to add 7.

19  And I am prepared to add the addendum to Question 43 that

20  you've requested.  And now, with respect to the Government's

21  two additional questions that it put on page 3 of its letter to

22  me -- I am not prepared to add either of those.

23          So I'll be happy to hear any brief comments either of

24  you wish to make, but that's my thought on the questionnaire.

25          **MR. NEDROW:**  We're prepared to submit.  Thank you.

1          MS. ARGUEDAS:  We are, too.

2          THE COURT:  All right.  Thank you.

3          The instructions you've both proposed -- basically,

4 that the forms be used -- that's what we'll do.  And we can

5 work on that.

6          MR. RUBY:  Your Honor, there was one special

7 instruction that the Government proposed --

8          THE COURT:  Oh, yeah.

9          MR. RUBY:  -- in respect to Count 11, the obstruction

10 count.  And it -- we won't argue about it now.  We view it as

11 an attempt to amend the indictment.  And so we just wanted to

12 flag it.

13          And, assuming it will be a while before we instruct,

14 we'd like to, in a reasonable time -- to submit a paper to you

15 which sets out the basis for our objections.

16          THE COURT:  All right.  That would be fine.

17          Where was that?  Was that in the pretrial memo?

18          MR. RUBY:  It was something we got on Friday.

19          MR. FINIGAN:  Your Honor, it's listed in the list of

20 instructions; but pursuant to your Order, we're to provide you

21 with a disk with the actual hard copies, which I haven't made

22 yet, but will get to the Court shortly.

23          THE COURT:  So I actually don't have it, is what

24 you're saying.

25          MR. FINIGAN:  Right.  The lists are for all Ninth

1  Circuit model instructions except for the final special

2  instruction, your Honor, which --

3         **THE COURT:**  Special Number 1, which I don't have.

4         **MR. FINIGAN:**  Right.

5         -- we drafted and we will put that on disk for the

6  Court.

7         **THE COURT:**  Have you seen it?

8         **MR. RUBY:**  We've seen it.  That's what I was

9  referring to.  It adds some --

10         **THE COURT:**  You know, I saw all of these materials

11  this morning, although I hadn't read about them earlier.

12  Anyway --

13         **MR. RUBY:**  And it asks to add some uncharged

14  statements to the obstruction count; statements which are not

15  charged in Counts 1 through 10.

16         **THE COURT:**  We'll deal with it when the time comes.

17         **MR. RUBY:**  Yeah.

18         **THE COURT:**  The trial exhibits -- what I'd like is

19  that on the Friday before the Monday of trial, which would be

20  Friday, February 27th, whatever exhibits you're proposing, and

21  all of the -- all of the plaintiff's exhibits and such exhibits

22  as the defendant knows it wants to submit -- he wants to

23  submit -- be submitted to the Court on paper in binders with

24  exhibit tabs.

25         Let me ask you this question.  When the time comes to

1  present the exhibit at trial, what is your plan?  Do you plan
2  to have it on computer disks?
3        **MR. PARRELLA:**  We will have, obviously, some paper
4  documents; but we will also have it in the computer systems, so
5  it will be called up.  You know, our plan would be, once the
6  item of evidence is entered, although we may -- we would then
7  make it available to the jurors and the whole courtroom.
8        There may be times when, in order to expedite things,
9  we have it on the computer system, so the defense and the Court
10  can see it without having to pass around the actual volume.
11       **THE COURT:**  What I would like with respect to paper
12  is I want a binder that has all the exhibits on pieces of
13  paper.
14       **MR. PARRELLA:**  Yes.  We will do that.
15       **THE COURT:**  And I think it's useful for the witness.
16  Although you can use your discretion on that, it's helpful to
17  have binders that have all the exhibits in them; but if you
18  feel like it's easier to do it witness by witness, you can do
19  it however you like.
20       Ms. Sutton does not need a separate set for herself
21  of copies.  So whatever the originals are, once the trial has
22  ended, those originals then need to be given to Tracy.
23       **MR. PARRELLA:**  Okay.
24       **THE COURT:**  Okay?
25       Now, you both indicated --

1           Mr. Ruby, did you have something?

2           **MR. RUBY:**  No.  We'll also have paper exhibits, and

3    do as your Honor says.  And we'll also have a hard drive with

4    exhibits loaded into that; except -- unless something comes up

5    at the last minute.  And we'll do what you just said.

6           **THE COURT:**  Okay, all right.  And then the other --

7    one other issue is that when last we met, we talked about the

8    conduct of the trial itself, and how there will be, to the

9    extent that there's an audience for it, a feed of the audio and

10   visual into the Ceremonial Courtroom as well as into the media

11   room on the first floor.

12          And then you both indicated, I think, in your letters

13   to me that you did not object to providing the media with

14   copies of exhibits once they're admitted into evidence.  Is

15   that right?

16          **MR. RUBY:**  Yes.

17          **MR. PARRELLA:**  That's correct.

18          **THE COURT:**  All right.  And what I will do is figure

19   out how that happens.  Whether it happens by Xeroxing or

20   photocopying, or whether it happens with -- in a -- if there's

21   an easier electronic way to do it, I do not know; but I take it

22   it's agreeable to you either way.

23          **MR. RUBY:**  Yes, it is.  And if -- if it turns out the

24   simplest thing is for us to just bring an extra set of copies,

25   please tell us.  I'm sure we're all glad to do that.  There are

1  enough copies.

2         **MR. PARRELLA:**  We could do that as well.

3         **THE COURT:**  That has a certain surface appeal to it.

4         **MR. RUBY:**  Primitive, but --

5         **MR. PARRELLA:**  Media room or something.

6         **THE COURT:**  You can figure out how to do that then,

7  but I do -- we have certainly received inquiry.  And I know

8  that would be welcome to the people who are following this.

9         Let me ask this question.  We -- the charges in the

10 case center on the grand jury testimony.  And, as I understand

11 from reading your papers, there may be references to grand jury

12 testimony of various other witnesses as well; but at least with

13 respect to Mr. Bonds, how do you plan to get the grand jury

14 testimony into evidence?

15        **MR. PARRELLA:**  Well, we've communicated with the

16 defense.  And in a preliminary -- for a preliminary matter, I

17 believe the actual foundation -- in other words, the ability to

18 put the document into evidence before the Court -- will either

19 be stipulated to, or we'll arrive at some agreement on it; but

20 is the Court asking about how are we going to communicate that

21 to the jury?

22        **THE COURT:**  Yes.

23        **MR. PARRELLA:**  In other words, question-and-answer

24 format?

25        **THE COURT:**  "How do you plan to communicate it to the

jury?" is my question.

**MR. PARRELLA:** Right. I would suggest that we do it once more in a question-and-answer format, where we -- last perjury trial we did here, we did that, where members of the Court staff actually, after the document was put into evidence, sort of play-acted and read the questions and answers. And I think that was effective, and it saved time, and it got the full document before the jury.

**THE COURT:** All right. Have you thought about this?

**MR. RUBY:** Not about that part of things, your Honor.

There may be issues. There may be 403 issues. There may be other things we'll ask you to take up before any part of the grand jury testimony is offered; but I'd like to, if it's all right, think about what they just said.

**THE COURT:** Okay.

**MR. RUBY:** Once you've ruled on whatever there might be to rule on as a way of doing -- we'll talk about that.

**THE COURT:** All right. Well, let me tell you this. It's my view that, given that certain questions and answers have been isolated in the transcript as the basis of the charges in this case, it's important for the trial jury to have the full context of the testimony. So it would be my thought that they should hear everything that was testified to, unless there are specific objections for specific reasons to various parts of it; but in general, I think the whole thing ought to

1  come in.

2        One question is:  what does "come in" mean?

3        I think "come in" means they hear it; but what is

4  your thought about the transcript?  Should it come in as well?

5        **MR. PARRELLA:**  Could we have one moment, your Honor?

6        **THE COURT:**  Mm-hm.

7        (Discussion off the record)

8        **MR. PARRELLA:**  I think, your Honor, in a prior trial,

9  we -- and I was conferring with Mr. Nedrow on this, because I

10  couldn't recall.  We marked the transcript, but it was not

11  actually accepted into evidence, and it did not go back to the

12  trial jury.  And so there, the evidence of the testimony was

13  just read to them.  And we would suggest that here as well.

14        **THE COURT:**  Okay.

15        **MR. RUBY:**  And if it is read, then I think there's no

16  need to give a transcript, too.  It ought to be offered to the

17  jury in one form or the other.  And so if what's finally

18  adopted is to read the testimony, then I agree; mark a copy of

19  it as part of the Court's record, but I wouldn't envision that

20  the transcript would go back in the jury room as well.

21        **THE COURT:**  All right.  I think you both just said

22  the same thing, but I mean, I'm willing to work with you and do

23  it however seems fairest; but I think that's what we did

24  before.  And that's what seems fairest to me; that, you know,

25  if we had tape-recordings that are played, for example, and if

1 there's a transcript made to make it easier to understand the

2 tapes, the tapes are the evidence; not the transcript. So I

3 think it would be the same thing here -- would be what they

4 hear.

5      In terms of who reeds it -- I'll think about that.

6      It so happens that the last defendant we had this

7 issue arise with was a woman. And I had female staff. And it

8 all worked out evenly. I still have female staff. And I think

9 that might be awkward. So we'll just have to figure out how we

10 do that.

11      But, Mr. Ruby, if there are portions of the

12 transcript that you feel we need to -- we need to excise or we

13 need to alter in some way because it doesn't belong in this

14 trial, I'd appreciate knowing that before the trial starts, so

15 we can get some of that out of the way before we get going.

16      **MR. RUBY:** All right. Thank you, your Honor.

17      **THE COURT:** There were a couple of things mentioned

18 in the Government's pretrial memo. The Government has

19 requested that witnesses be excluded, except the Government's

20 designated agent. And I will issue such an Order, with the

21 exception, of course, of experts who may sit in if they want

22 to.

23      The Government raised the question of Mr. Anderson.

24 What is your plan on that? Would you wait until the trial? Is

25 that your plan?

1          **MR. PARRELLA:**  Yes, your Honor.

2          **THE COURT:**  Okay.  That's what we'll do.

3          **MR. RUBY:**  Well, I'm sorry, your Honor.  We had asked

4    that whatever is done in respect to Mr. Anderson not be done in

5    front of the jury.

6          **THE COURT:**  Oh, no, no.  Exactly.  I wouldn't --

7    well, we'll talk about that.  It is -- it is not my thinking

8    now that it would happen in front of the jury, but my guess --

9    I guess my real question is:  are we going to go through this

10   before we start the trial, or are we going to go through it

11   after the trial has begun?  And you've called him.  And I take

12   it your plan would be the latter.

13         **MR. PARRELLA:**  And I think there are actual reasons

14   for that, in that there may be -- going from the history of the

15   case, there may be a situation where there's -- a contempt

16   issue arises.  And we feel that there can't be an anticipatory

17   contempt.  And if the person is called -- should be called to

18   trial.  So we would like to do that.

19         On the issue that was just discussed about whether it

20   is done in the front of the jury or not, we would like to be

21   heard on that at the proper time.  We don't need to, I think,

22   army through today, but we're not of that opinion that it

23   should not be before the jury.  So --

24         **THE COURT:**  Mr. Ruby.

25         **MR. RUBY:**  Well, we respectfully ask that this be

1   done before jury selection; I mean, we do it during the trial.

2   Among other things, the opening statements might be different,

3   depending upon people's expectations as to whether this witness

4   testifies or not.

5           And if the Government's suggesting we wait until --

6   what? -- the second week of trial, or after opening statements,

7   that -- I mean, that doesn't seem --

8           **THE COURT:**  Well, there's another problem, too, which

9   is that there are a number of evidentiary motions pending.  I'm

10  prepared.  And I will, later today or tomorrow, I guess, rule

11  on them.

12          I've been waiting on your *Daubert* papers, which I

13  think are set to come in tomorrow; but some of those rulings

14  would be conditional on testimony coming in or not.

15          Prior to opening statements, we probably need to know

16  if that's -- if those materials are coming in or not, because

17  if you say they're coming in and they don't come in because

18  there's no foundation for them, that could be a problem.

19          So your suggestion, then, is that we determine in

20  advance whether Mr. Anderson plans to testify.

21          **MR. RUBY:**  Before jury selection.  Yes.

22          And before jury selection is a recognition that there

23  will be a lot of public attention on that hearing, as there are

24  on other hearings.  And if there's some part of that that

25  particularly impresses itself upon the jury pool, it would be

1  better to know about that when we -- before we select a jury

2  rather than afterwards.

3          **THE COURT:**  What do you think about that?

4          **MR. PARRELLA:**  Well, I would just say I'm not aware

5  of any authority for doing that.  And if you find --

6          **THE COURT:**  I haven't found any authority, period.

7  Mr. Parrella, can you find me a case where somebody's been

8  imprisoned for a year during grand jury proceedings, and then

9  is called to testify at a subsequent trial, and is put in jail

10 again?  Have you ever had found that?

11         **MR. PARRELLA:**  No.  No, your Honor.

12         **THE COURT:**  Neither have I.

13         **MR. PARRELLA:**  We don't have cases on all fours like

14 that.

15         However, there are cases where witnesses are called

16 to testify at trial, take the Fifth, are immunized, and then

17 refuse to testify; all happening before the jury.

18         So at least on some portion of this situation, the

19 cases are similar.  So I just think that doing this before the

20 trial is not addressing the issue the way it should be.  This

21 witness was subpoenaed for trial.

22         **THE COURT:**  I'll tell you what.  I'll tell you what.

23 We can do a belt-and-suspenders, if you like, which is:  we can

24 hold the hearing prior to the jury selection, and find out if

25 Mr. Anderson plans to testify.

1          Assume for a moment -- I mean, he could say "Yes" or

2     he could say "No."  Let's say for a moment he says "No."  That

3     would guide at least what the opening statements may or may not

4     include.

5          And then if you feel that there's some issue of

6     anticipatory-ness about that that would require that he be

7     called again during trial, you could do that during trial; not

8     necessarily in front of the jury, but during the trial.  And

9     make sure that the --

10          **MR. PARRELLA:**  Mm-hm.

11          **THE COURT:**  And make sure that his decision hasn't

12     changed; but I agree that we need to know prior to opening

13     statements whether he's planning to testify.

14          **MR. PARRELLA:**  Well, if I'm reading the Court

15     correctly -- and based on tentative ruling, the sort of

16     conditional nature which you just laid out -- I would imagine

17     that the ruling would be something along the lines of excluded

18     unless this -- unless --

19          **THE COURT:**  Unless there's a basis or for it.

20          **MR. PARRELLA:**  -- unless there's some other

21     testimony.

22          So I don't know.  I think that gives everybody enough

23     notice to proceed, but maybe on this particular grounds, we

24     could think about this a little bit, and either schedule

25     another appearance before the Court, or submit something before

1 the end of the week, or something, on just -- just on the

2 pretrial appearance of Anderson.

3       **THE COURT:**  Why don't you talk to each other?  See

4 how you want to do that.

5       But I think we should have a hearing prior to the

6 commencement of jury selection.  So that would mean, like,

7 during the week of -- what is it? -- February 22nd, the last

8 week in February --

9       **MR. PARRELLA:**  Next week.

10       **THE COURT:**  -- next week, to get that straightened

11 out as much as we can.

12       **MR. NEDROW:**  Your Honor, before we move on, if I

13 may -- just if it were to come to pass that hearing were to

14 occur, we would ask the Court to order Mr. Anderson to be here.

15 Subpoenas from March 2nd.  And he's actually said he's not

16 going to respond to the Government's subpoena.

17       So, in other words, we would ask that the Court order

18 Mr. Anderson to be here as a part of whatever scheduling is set

19 up.  We'll submit an order if it's going that way.

20       I just want to alert the Court to Mr. Anderson.

21 Though he's been served with a subpoena, he's not going to

22 respond to the subpoena.  There's a mechanical problem in terms

23 of him getting here and coming in.

24       **THE COURT:**  Well, you'll just have to do what you

25 have to do, but my suggestion is that we figure out among

1  counsel and with the Court when we would like to have this
2  preliminary hearing that we're talking about.  And then the
3  next step would be to make sure that Mr. Anderson was
4  available.

5          **MR. NEDROW:**  Okay.

6          **THE COURT:**  He has counsel?

7          **MR. PARRELLA:**  Yes, your Honor.

8          **THE COURT:**  The next point in the Government's brief
9  was a concern about witnesses from out of state being recalled
10 at the behest of defendants, and who should pay for that.

11         I am not going to order in advance that a recalled
12 witness be paid by the defense.  We'll just deal with that when
13 the time comes.

14         And it was okay that you didn't submit *voir dire*
15 questions, because we do have a question.  There were some
16 points raised in the defense brief which were anticipated as
17 areas that may become of concern, but were not framed as
18 immediate motions *in lim*.  And I don't see that I can rule on
19 any of these at this time, because nothing has happened.

20         **MR. RUBY:**  Your Honor, we're not asking for a ruling.
21 We'll -- I mean, there may be many issues or none; but whatever
22 issues there are, we think we're now at a point where most of
23 them -- the Court would want some context and we'd want some
24 context.  And it's our intention, if we see an issue coming up
25 down the road, to try to give notice and present it to the

1  Court in a seasonable way to take it off.

2           **THE COURT:**  That would help.

3           **MR. RUBY:**  None of these things, in our view, need to

4  be ruled on now.

5           **THE COURT:**  Okay.  All right.  We also have *Daubert*

6  issues which the Government has briefed.  And I'm expecting

7  I'll get briefs from you tomorrow.

8           **MR. CASSMAN:**  Yes, you will, your Honor.

9           **THE COURT:**  Okay.  And in that connection, we'll see

10  what the expert testimony is likely to cover.  And, to the

11  extent there are lay witnesses whose testimony would be offered

12  as a predicate or foundation for the experts, I will consider

13  that as well in light of some of the issues that have been

14  raised in the papers of the parties so far.  I may require

15  offers of proof concerning what the lay witnesses might or

16  might not testify to prior to making any final decisions on

17  that, but that would be clear in my Order.

18          **MR. PARRELLA:**  Your Honor, that's on the lay witness

19  opinion, or the lay witness sort of factual underpinnings for

20  others' opinions?

21          **THE COURT:**  Right.

22          So that's what I have.

23          Are there other issues we need to address today?

24          **MR. RUBY:**  Your Honor, I had suggested to the

25  Government some procedures about notifying each other about

1  witnesses.

2          **THE COURT:**  Okay.

3          **MR. RUBY:**  I think, just in the crush of getting all

4  the paperwork done, we didn't have a chance to get back to each

5  other.  Could I be excused for a moment to talk to Mr. -- maybe

6  that's something we can solve in 30 seconds.

7          **THE COURT:**  Of course.

8          (Discussion off the record.)

9          **MR. RUBY:**  We've agreed, your Honor, that the

10  Government will -- when they're putting on their case at the

11  end of one court day, they'll tell us who their witnesses are

12  for the next court day.  And since we're not in session on

13  Friday, by two o'clock Friday, they'll let us know who the

14  Monday witnesses are.  And when we're putting on our case,

15  we'll do exactly the same.

16          **THE COURT:**  Is that agreeable?

17          **MR. PARRELLA:**  Yes, your Honor.

18          **THE COURT:**  All right.  Anything else?

19          **MR. PARRELLA:**  Not from the Government.

20          **MR. RUBY:**  I don't think so, your Honor.

21          **THE COURT:**  All right.  Thank you.

22          **MR. PARRELLA:**  Thank you, your Honor.

23          (At 4:15 p.m. the proceedings were adjourned.)

24

25

## CERTIFICATE OF REPORTER

I, LYDIA ZINN, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in CR. 07-0732-SI, United States of America v. Barry Lamar Bonds, were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

/s/ Lydia Zinn, CSR 9223, RPR

Wednesday, March 18, 2009