Pages 1 - 23

United States District Court

Northern District Of California

Before The Honorable Susan Illston

United States of America,    )
                             )
          Plaintiff,         )
                             )
   vs.                       )          NO. CR 07-0732 SI
                             )
Barry Lamar Bonds,           )
                             )
          Defendant.         )
_____)

                             San Francisco, California
                             Friday, February 27, 2009

### Reporter's Transcript of Proceedings

**Appearances:**

For Plaintiff:          Joseph P. Russoniello
                        United States Attorney
                        450 Golden Gate Avenue, Box 36055
                        San Francisco, California  94102
                By:  **Jeff Nedrow, Esquire**
                     **Matt Parrella, Esquire**
                     **Jeff Finigan, Esquire**
                     **Assistant United States Attorneys**

For Defendant:          Law Offices of Allen Ruby
                        125 South Market Street, Suite 1001
                        San Jose, California  95113
                By:  **Allen Ruby, Esquire**


(Appearances continued on next page.)



*Reported By:*          *Sahar McVickar, RPR, CSR 12963*
                        *Official Reporter, U.S. District Court*
                        *for the Northern District of California*

                (Computerized Transcription by Eclipse)

*Sahar McVickar, C.S.R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

1    **Appearances, continued:**

2    For Defendant:          Arguedas, Cassman & Headley, LLP
                             803 Hearst Avenue
3                            Berkeley, California  94710
                     **By:  Christina C. Arguedas, Esquire**
4                            **Ted Cassman, Esquire**

5                            Riordan & Horgan
                             523 Octavia Street
6                            San Francisco, California  94102
                     **By:  Dennis Patrick Riordan, Esquire**
7
                             Geragos & Geragos
8                            644 South Figueroa Street
                             Los Angeles, California  90017
9                    **By:  Mark John Geragos, Esquire**

10

11                          ---o0o---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **Friday**, **February** **27**, **2009**                    **10:30 a.m.** |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  Calling criminal 07-732, United States |
| 4 | versus Bonds. |
| 5 | Counsel, please state your appearances for the |
| 6 | record. |
| 7 | **MR. PARRELLA:**  Good morning, Your Honor. |
| 8 | Matt Parrella Jeff Nedrow, Jeff Finigan. |
| 9 | **THE COURT:**  Good morning. |
| 10 | **MR. RUBY:**  Good morning. |
| 11 | Allen Ruby for Mr. Bonds. |
| 12 | **MS. ARGUEDAS:**  Good morning, Your Honor. |
| 13 | Chris Arguedas. |
| 14 | **MR. CASSMAN:**  Good morning, Your Honor. |
| 15 | Ted Cassman. |
| 16 | **MR. RIORDAN:**  Good morning. |
| 17 | Dennis Riordan and Donald Horgan. |
| 18 | **MR. GERAGOS:**  Good morning, Your Honor. |
| 19 | Mark Geragos, G-e-r-a-g-o-s. |
| 20 | **THE COURT:**  Good morning.  Thank you for being here. |
| 21 | Mr. Geragos, I had asked that your client be here |
| 22 | because I understand that he has been subpoenaed to testify at |
| 23 | the trial, which is to begin next week, and there is some |
| 24 | question whether he plans to appear and testify.  And, I wanted |
| 25 | to explore that this morning. |

1           **MR. GERAGOS:**  Okay.  And thank you for accommodating

2    my schedule.

3           **THE COURT:**  You're welcome.

4           **MR. GERAGOS:**  My judge down in Southern California

5    thanks you.

6           There is no question, at least in his mind, he will

7    appear whenever ordered to, but he is not going to testify.

8    And that is his position, and it hasn't changed since all of

9    the other litigation that we have done.

10          **THE COURT:**  All right.  Has he -- he's been provided

11   with an immunity order?

12          **MR. GERAGOS:**  He was originally given an immunity

13   order.  I believe that if they were to try to go down that road

14   again, that he would need a new immunity order.  I don't want

15   to get into why I believe that, but I believe that is the case.

16          **THE COURT:**  All right, thank you.

17          **MR. GERAGOS:**  Okay.

18          **THE COURT:**  Mr. Parrella?

19          **MR. PARRELLA:**  First of all, we did provide a

20   immunity order back in May 12th of '06; we believe it continues

21   because it states all ancillary purposes.  However, if we want

22   one specifically for the trial, we can submit one.

23          **THE COURT:**  I think that would be prudent.

24          **MR. PARRELLA:**  So, we will do that immediately.

25          And while it wasn't really addressed whether this

1  witness would assert a Fifth Amendment right to refuse, to the
2  extent that he does or may, that should not be an issue.

3       **THE COURT:**  Well, that's why I think it would be
4  prudent to have a fresh order in place.

5       **MR. PARRELLA:**  All right.

6            **(Brief pause in the proceedings.)**

7       **MR. PARRELLA:**  You're thinking, but I just would
8  like to make a suggestion that although I understand counsel's
9  representations about his client's position, the purpose of
10  this is to determine what his clients position is.

11       **THE COURT:**  I understand that.  I was just thinking
12  what I would ask Mr. Anderson to share with me today.

13            I wanted to tell you, Mr. Anderson, that the reason
14  we are having this hearing is to -- the reason that I wanted to
15  have this today, as opposed to next week, is so that the
16  lawyers in the case would know what they could expect to happen
17  at the trial so that as we begin the trial the jurors will be
18  fairly informed of what testimony they might -- might expect to
19  hear.  If you agree to testify in this case, I know that the
20  prosecution will want to have your testimony and will be -- be
21  planning on featuring that testimony in the presentation of
22  their case.  If you don't testify, that's going to make a
23  difference in how they proceed, so that's why we are doing this
24  today.

25            What I do want to tell you, I think we will have to

1  do this again after the trial begins.  So that the --

2          **MR. GERAGOS:**  Can we approach?

3          **THE COURT:**  That would be good because I need to

4  have a conversation with Mr. Anderson a little bit.

5          **MR. GERAGOS:**  I believe that Your Honor is correct;

6  I don't think -- there is a case off the out of the Sixth

7  Circuit, **Johnson**, you can't have an anticipatory contempt.  The

8  only accommodation, again, I would ask is that I -- they recess

9  the case that I'm in, I should be arguing on Tuesday, and I

10  could come back up on Wednesday, if that's when the Court

11  wanted to do it.

12          **THE COURT:**  I think Wednesday would be fine because

13  my current plan is that we will pick the jury on Tuesday --

14          **MR. GERAGOS:**  Okay.

15          **THE COURT:**  And so we wouldn't start until

16  Wednesday, anyway.

17          **MR. PARRELLA:**  That would be fine.

18          **MR. GERAGOS:**  I think under the **Johnson** case, even

19  though the Court -- obviously, you can do with him whatever you

20  want, within limits, I think that under that case that it has

21  to be done during the proceeding.

22          **THE COURT:**  Right.  That would be my -- that would

23  be my intention, but I wanted to share with you my thought

24  right now.

25          The Government has represented to me, and I believe

it to be true, that if you testify, your testimony would be central to the presentation of their case, so it's important. And so, you will need to respond to the subpoena and be here, basically, when I order you to be here and when the subpoena says to. And as far as I'm concerned, Wednesday morning would be fine for that, next week. That would be March 4th?

MR. GERAGOS: Fourth.

THE COURT: Fourth.

And at that time, I will order you to testify. I will inquire whether you want to, and if you tell me no, then I'll order that you do so. I'll make sure that between now and then we get an immunity order so that you will not be able to assert your Fifth Amendment right not to testify. And there won't be any right left not to testify, and I'll order you to testify. And if you refuse to testify, you'll be in contempt of my order.

MR. ANDERSON: (Nodding head in the affirmative.)

THE COURT: And, I will send you to custody --

MR. ANDERSON: (Nodding head in the affirmative.)

THE COURT: -- until you purge yourself of the contempt, which would be by coming back and testifying. So, you will be given an opportunity to change your mind any time during the course of the trial and come to testify, and that would take care of it. But, that's what I will do if you don't testify in this case.

```
1              Do you understand that, sir?
2         MR. ANDERSON:  Yes, Your Honor.
3         THE COURT:  Okay.
4              Is it your plan currently not to testify?
5         MR. ANDERSON:  Yes, Your Honor.
6         THE COURT:  Okay.
7              Mr. Parrella, if you get me an appropriate immunity
8    order, I will sign it.  And will we'll get that -- may we serve
9    that on you, Mr. Geragos?
10        MR. GERAGOS:  Absolutely.  That's fine, Your Honor.
11        THE COURT:  And your lawyer will get it,
12   Mr. Anderson, but it will -- it will mean that you don't have
13   the right not to testify; do you understand?
14        MR. ANDERSON:  Yes, Your Honor.
15        THE COURT:  Okay.
16        MR. PARRELLA:  We'll provide that to him.
17        THE COURT:  Okay, that would be fine.
18             I'll sign it today.  It will be e-filed, and we'll
19   get it to you as soon as we can.
20        MR. GERAGOS:  I --
21        THE COURT:  And --
22             Yes, sir?
23        MR. GERAGOS:  I'm sorry, I didn't mean to interrupt.
24             I was just going to say I understand the Court's
25   admonition to him about back into custody, and I assume, and I
```

1    don't want do get in the way of your trial, but I assume at

2    some point you will allow me to argue as to why I don't think

3    he can be put back into custody for the refusal?

4            *THE COURT:*  Sure, I'll allow you to do that.

5            Do you want to do it now, or do you want to do it --

6            *MR. GERAGOS:*  I don't think that I can do it now --

7            *THE COURT:*  Okay.

8            *MR. GERAGOS:*  -- because it would be advisory.  So I

9    think I have to wait until the Court does it and we go jump

10   through all the hoops.  Otherwise, I'm afraid I would not have

11   perfected any -- my record.

12           *THE COURT:*  Okay, we can do that at the time.  But

13   assuming we are in trial, we'll do it on a break.

14            *MR. GERAGOS:*  I understand that.

15           *THE COURT:*  So that we don't interfere with the

16   jury.

17           *MR. PARRELLA:*  We agree with that, Your Honor.

18        I have one just one further request:  In your

19   admonition to the witness, the Court referred, in effect, to

20   civil contempt, and I would just also ask that these actions

21   may subject to him to actual punishment under criminal contempt

22   as well.

23           *THE COURT:*  Well, that's possible -- but that's not

24   what --

25           *MR. PARRELLA:*  Possible, possible.

1    **THE COURT:** -- what's for next week.  Next week is

2    not criminal contempt, next week would be civil contempt, which

3    is meant to persuade you to testify.  And any time you say,

4    yes, I'm ready to testify, why, then the contempt would be

5    purged, and you could come in and testify.  And, the reason

6    that I'm doing that is because the Government has represented

7    that your testimony is very important in this case.

8    But Mr. Parrella is right; in addition to the civil

9    contempt, there could be a finding of criminal contempt.  It

10   would require a hearing and you would have a right to be heard

11   or not, depending on if you wanted to talk.  And that could

12   actually -- that could result in punishment.  But that's

13   separate and apart from what I'm suggesting will happen next

14   week, which is just an effort to make you testify.

15   **MR. ANDERSON:** *(Nodding head in the affirmative.)*

16   **THE COURT:** Anything else for now, Mr. Parrella?

17   **MR. PARRELLA:** Not on this matter, Your Honor.

18   **THE COURT:** Okay.  All right.

19   **MR. GERAGOS:** The order is for 10:00 clock on the

20   4th?

21   **THE COURT:** Is that what you said in the subpoena?

22   **MR. PARRELLA:** I believe that would be adequate.

23   10:00 o'clock on Wednesday, the 4th.

24   **MR. GERAGOS:** Wednesday, the 4th, okay.

25   **THE COURT:** Well, if things go as I'm currently

1    planning that they go, we would be having opening statements on

2    Wednesday.  10:00 o'clock would be fine, but it probably won't

3    really happen, till, say, noon.

4         *MR. GERAGOS:*  Do you want us here at 10:00 or do you

5    want us here at noon?

6         *THE COURT:*  Why don't you be here at 10:00.  But you

7    may have to wait a little bit.

8         *MR. GERAGOS:*  I'll bring reading material.

9         Thank you, Your Honor.

10        *THE COURT:*  All right.

11        *MR. GERAGOS:*  May we be excused?

12        *THE COURT:*  Mr. Parrella?

13        *MR. PARRELLA:*  Yes, Your Honor?

14        *THE COURT:*  Is there any the reason that

15   Mr. Anderson and Mr. Geragos have to stay any longer?

16        *MR. PARRELLA:*  Not from our side.

17        *THE COURT:*  All right, thank you.

18        *MR. GERAGOS:*  Thank you very much, Your Honor.

19                  **(Attorney Geragos and Mr. Anderson exit**

20                  **courtroom.)**

21        *THE COURT:*  There are some housekeeping matters I

22   have to speak with all counsel about.

23        And Mr. Parrella, I don't know what else is on your

24   list.

25        *MR. PARRELLA:*  Well, I don't want to waste

1  everyone's time here:  I feel obligated to inform the Court

2  that the department is contemplating an appeal on the

3  February 19th order.  I say that because it is being

4  contemplated.  And, we will inform the Court and counsel as

5  soon as -- as possible on that.  But that's --

6          **THE COURT:**  Just so you know --

7      **MR. PARRELLA:**  That's where it lies right now.

8          **THE COURT:**  We have 90 jurors who have been time

9  qualified for a month-long trial.  That is an enormous

10 undertaking and a huge commitment on the part of the Court to

11 get this case tried.

12         We've got the questionnaires prepared.  We are ready

13 to go.  We have made enormous accommodations so that the First

14 Amendment rights of the press and the public to hear this

15 matter can be accommodated.  And it will be an enormous expense

16 and inconvenience if the trial doesn't begin next week, as

17 we've planned.  So, I just want you to understand that.

18         **MR. PARRELLA:**  I understand that.  Thank you, Your

19 Honor.

20         **THE COURT:**  When do you anticipate you would know?

21         **MR. PARRELLA:**  Um --

22         **THE COURT:**  And I'm really asking what time today

23 you will tell me?

24         **MR. PARRELLA:**  Today.  And beyond as soon as

25 possible, I really could not give you an estimate of time.

1          **THE COURT:**  Well, I need more than that,

2    Mr. Parrella, because we've to call off 90 jurors today if they

3    are not to come in on Monday.

4          **MR. PARRELLA:**  Well, then, I would have to say

5    3:00 o'clock.

6          **THE COURT:**  All right.

7          **MR. RUBY:**  Your Honor, may I please inquire through

8    the Court whether what is also being mulled over is an

9    application for a stay of the trial?

10          **THE COURT:**  Well, I think it might be more automatic

11    than that, Mr. Ruby.

12          **MR. PARRELLA:**  Yes, I believe it is.

13          **THE COURT:**  Looks to me like it is automatic.

14          **MR. PARRELLA:**  I believe that the -- if a notice of

15    appeal was filed, for the time period that it's active, divests

16    this Court of jurisdiction for that time period.

17          **THE COURT:**  Now, I mean, I would be delighted to

18    know that I'm wrong about that, but I'll tell you what I was

19    looking at was 18 U.S.C. 3731.

20          Is that what you were looking at, Mr. Parrella?

21          **MR. PARRELLA:**  Yes, Your Honor.

22          **MR. RUBY:**  Well, as usual, everyone is ahead of me

23    on this.

24          **THE COURT:**  I read the *New York Times*, Mr. Ruby --

25                    **(Laughter.)**

1          **THE COURT:**  -- and so I figured this might happen.

2          **MR. RUBY:**  Just so -- again, so in the same spirit

3      of letting everybody know where they stand, if there is a

4      discretionary component to whether the trial goes forward,

5      notwithstanding the appeal that they are mulling over, we

6      oppose any delay in the trial.  And, if the law permits us to

7      be heard on that, we will ask to be heard.  But, we are getting

8      -- I'm getting ahead of myself, and but that is where we stand.

9          **THE COURT:**  All right, well, take a look at 3731 and

10     you can see.  Because I would be delighted to have discretion

11     to deny the stay, but I don't know if I do.

12         **MR. RUBY:**  Thank you.

13         **THE COURT:**  So 3:00 o'clock today.  And you'll share

14     with counsel --

15         **MR. PARRELLA:**  Yes.

16         **THE COURT:**  -- your view?

17         **MR. PARRELLA:**  *(Nodding head in the affirmative.)*

18         **THE COURT:**  Assuming for a moment that we go forward

19     next week, there are a few other things I wanted to mention.

20         One is that we currently have two capital trials in

21     process down the hall on this floor.  And you may have noticed

22     that there are some magnetometers for the folks going into

23     those courtrooms in place, so the scrutiny that the marshals

24     and the other security personnel are providing for us now is

25     particularly acute because there is the issues of the capital

cases down the hall as well as just the general number of
people involved in the trial going on here.

            As a consequence, everyone coming into this building
is being very carefully scrutinized.  So I just want to
emphasize that weapons are not allowed in any audience in my
courtroom or in any other courtroom on this floor.  So, nobody
should try or be under the misapprehension that whether they
are otherwise authorized to carry weapons that they may carry
weapons into this courtroom, they may not do that.  So, I just
want to emphasize that.

            Oh, I wanted to ask, and I don't know if I've issued
an order related to this or not:  Does the defendant plan to be
here on Monday?

            **MR. RUBY:**  We were going to ask to the Court.  Our
impression was none of us needed to be here.

            **THE COURT:**  That was my impression as well.

            **MR. PARRELLA:**  That was our understanding, is that
while we will be in the building to collect the completed
questionnaires at whatever time they are completed --

            **THE COURT:**  Right.

            **MR. PARRELLA:**  -- we didn't actually have a court
date.

            **THE COURT:**  Right, that's my thought, too.  So if
nobody objects, I don't see any reason for the defendant to be
here Monday.  Tuesday, but not Monday.

1          **MR. RUBY:**  Thank you.

2          **THE COURT:**  Oh, the questionnaires:  We have the

3     questionnaires.  And I believe the Government has agreed to

4     make the photocopies for Mr. Weir, in the Jury Office.  So

5     those will be -- the jurors are going to get here around 9:00

6     on Monday, they will fill out the questionnaires, and they will

7     be ready for you, I think David said, by about noon.  And I

8     want a copy, and you guys have copies, and you can go over

9     them.

10          If there are any jurors as to whom you just

11     completely agree they are disqualified for cause, you jointly

12     agree on that, by, say, 4:00 o'clock on Monday, you may let me

13     know.  And if I agree with you, we will leave a message for

14     those jurors that they don't to have come back on Tuesday.

15          I'm not urging you to try to do that because I don't

16     want us to get bogged down in fights over for-cause challenges

17     in advance, but if there are some that you just feel there is

18     really no question about and you jointly agree on that, let me

19     know -- if you could let me know by 4:00, we can put a phone

20     message up that those folks don't need to come in so we would

21     save them a trip.

22          Oh, and I want you to know that my plan on Monday is

23     to meet -- to go into the jury room after they are all there

24     and before they have begun doing the questionnaires.  I'll have

25     a court reporter; I did not contemplate having counsel there,

1   just to tell them that they -- just to order them not to read

2   any newspapers or watch any TV stories or listen to any radio

3   stories or go on the Internet or communicate about this case

4   between Monday and Tuesday.  That's my plan because otherwise I

5   don't think they would know that.

6           So I want to know if there is any objection to that.

7           **MR. PARRELLA:**  I have no objection on that, but I

8   would go further and add that to the admonition at the end of

9   every day.

10          **THE COURT:**  Oh, I will every day, but I'm just

11  talking about when counsel and the clients are not there.  I

12  don't normally hang out with the jurors, so I just wanted to

13  alert you that that is my plan on Monday, before anybody

14  anybody's even filled out a questionnaire.  I want to make sure

15  they don't start researching on Monday.

16          **MR. RUBY:**  No objection.

17          **THE COURT:**  And as I say, I'll take a court reporter

18  and put it on the record so you'll have a record of what that

19  was.

20          Oh, we -- we have been allocating space in this room

21  for the process, and I see Joan Anyon out there; Joan's been

22  just doing such wonderful work to help us get organized.  And

23  we have roughly, I think we've said 60 seats for the press in

24  this room, and that leaves 28 seats for everybody else in the

25  room.

1        Is that right, Joan?

2            **MS. ANYON:**  Yes.

3            **THE COURT:**  In addition, of course, there is the

4   overflow room in the ceremonial courtroom, which will have a

5   lot of seats.

6            I do not contemplate any -- anybody sitting in front

7   of the bar except lawyers and people affiliated in some way

8   with the lawyers.  So my question to you, Mr. Ruby, is does

9   Mr. Bonds have any number of seats he wants in the -- for

10  family, for example?

11           **MR. RUBY:**  Yes, Your Honor.

12           **THE COURT:**  How many?

13           **MR. RUBY:**  At the beginning of the trial -- I don't

14  know how many seats go into a row, but at the beginning of the

15  trial would the consider setting aside the first two rows,

16  half --

17           **THE COURT:**  No.  I would consider his family, and I

18  don't know how many that is, but nobody else.

19           **MR. RUBY:**  Um, well, then can -- may we please have

20  one row, and we'll see how that goes?  If we need to make

21  application to the Court we will, but that might work.

22           **THE COURT:**  How many family is that?  That's a lot

23  of family.

24           I don't want bodyguards, I want family.  Bodyguards

25  can come, but they are going to have to stand in line with

1  everybody else.  But the family comes to the head of the line.

2  That's my view, anyway.

3          **MR. RUBY:**  We weren't talking about bodyguards.

4          **THE COURT:**  Okay.

5          **MR. RUBY:**  There are family; there are friends;

6  there are children.  I mean, and again, I don't know exactly

7  how many seats comprise a half row.

8          **MS. ANYON:**  Eleven.

9          **THE COURT:**  Eleven?

10          **MR. RUBY:**  I think that -- if by "family" the Court

11  means immediate family, well, there aren't 11 immediate family,

12  but there are kin folk who I think would fit the description of

13  family.

14          And if -- and again, if a life-long friend doesn't

15  qualify, then 11 seats would do it.  We'll take -- under the

16  circumstances, we'll take what we can get.  We are not trying

17  to intrude or on anybody else's prerogatives.

18          **THE COURT:**  Right.

19          **MR. RUBY:**  There is also some consideration:  There

20  may be times during the trial when Mr. Bonds would want to sit

21  next to his wife or mom and be in the row with them, and so if

22  that is a public seating area or if half the row is a public

23  seating area, maybe that isn't the most desirable sort of

24  thing, so I would ask you to take that into account in deciding

25  whether one of those rows is suitable.

1          **THE COURT:** All right, well, I'll think about that.

2    I don't -- I want to make sure that non-press public has enough

3    room to come watch the trial, to the extent that they care to.

4          And the -- access will be, you know, first

5    come/first serve. And of course, by the second week the

6    interest may be less acute than it is in the first week as

7    people realize what trials are actually like.

8                    **(Laughter.)**

9          **THE COURT:** So if your request is particularly with

10   respect to the first day or two, let me think about that.

11         **MR. RUBY:** All right, thank you.

12         **THE COURT:** Okay.

13         **MR. RUBY:** Will there be a minute order whether the

14   Court makes this decision, if we could know who to contact when

15   Tuesday morning comes, so that we know for sure what the real

16   estate is and that person will know --

17         **THE COURT:** Okay.

18         Joan, may I tell them to contact you?

19         **MS. ANYON:** Yes.

20         **THE COURT:** In any event, you can contact Joan

21   Anyon.

22         **MR. RUBY:** Pardon me?

23         **THE COURT:** In any event, you can contact Joan Anyon

24   with respect to that particular issue, too. She has been the

25   guru of those kinds of matters.

1          **MR. RUBY:**  Thank you.

2          **THE COURT:**  Um-hmm.

3          Okay, that's all on my list.  Is there anything else

4    on other folks' list?

5          **MR. RUBY:**  A question:  Will Mr. Weir be providing

6    us with the rank jurors, that is, the list, so we will know the

7    order in which people will be called?

8          **THE COURT:**  Yes, in the following way:  He'll give

9    you a random -- they are going to generate a random order.

10         **MR. RUBY:**  Yes.

11         **THE COURT:**  So, they'll give you that list which is

12   all the names, and that will be the order that we follow when

13   we do the voir dire.  So that will be the order.

14         The questionnaires will be in alphabetical order, so

15   somebody is going to have to rearrange the questionnaires to

16   put them in the order that the random list generates.  But then

17   you will know.

18         **MR. RUBY:**  Thank you.  We're grateful to Mr. Weir.

19   And, it will save everyone a lot of time.

20         **THE COURT:**  I think so, yeah.

21         Mr. Parrella, anything else?

22         **MR. PARRELLA:**  Nothing further, Your Honor.

23         **MR. RIORDAN:**  Your Honor, could we have just a

24   couple of seconds?

25         **THE COURT:**  Sure.

1          **(Attorneys Riordan and Ruby confer.)**

2          *MR. RUBY:*  Your Honor, with the Court's permission,

3    what we intend to do later today is to file a brief on the

4    subject of whether Mr. Anderson could be called in front of the

5    jury.  He can't, but we have a brief on this.

6          *THE COURT:*  Good.  I would like that.  I would like

7    to see what your thoughts are.

8          *MR. RUBY:*  We'll get that filed as soon as we can

9    today.

10          *THE COURT:*  Thank you.

11          Anything else?

12          *MR. PARRELLA:*  No, Your Honor.

13          *THE COURT:*  So we'll hear from you by 3:00?

14          *MR. PARRELLA:*  Yes.

15          *THE COURT:*  Thank you.

16                    **(Proceedings adjourned at 10:55 a.m.)**

17

18                          ---o0o---

19

20

21

22

23

24

25

<u>**CERTIFICATE OF REPORTER**</u>

        I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

**/s/ Sahar McVickar**

**Sahar McVickar, RPR, CSR No. 12963**

**March 16, 2009**
